478 So.2d 779 (1985)
Ashton E. SHARBONO, Plaintiff-Appellee,
v.
H & S CONSTRUCTION COMPANY, et al., Defendants-Appellants.
No. 84-800.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1985.
*781 David LaFargue of LaBorde & LaFargue, Marksville, for defendants-appellants.
Fuhrer, Flournoy & Hunter, John E. Morton, Alexandria, for plaintiff-appellee.
Before GUIDRY, STOKER and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court erred in awarding plaintiff judgment against both his employer and his employer's insurer, in solido, for workmen's compensation benefits, penalties and attorney's fees, and in fixing certain fees and then taxing these and certain other items of expense as court costs.
Ashton Eugene Sharbono (hereinafter plaintiff) sued defendants, his former employer, H & S Construction Company (hereinafter H & S Construction), and its insurer, The North West Insurance Company (hereinafter North West), for workman's compensation benefits for total and permanent disability, as well as for penalties and attorney's fees. The trial court found that claimant was temporarily totally disabled and held defendants liable, in solido, for workman's compensation benefits to plaintiff during such disability, together with legal interest from the due date of each weekly payment, until paid, subject to a credit for sums paid as workman's compensation benefits by defendants. In addition, the trial court held the defendants liable, in solido, for $256.00 for the medical bill of Lafayette Radiology Asociated, together with legal interest thereon from date of judicial demand, until paid; penalties of twelve percent (12%) on the total amount of damages due on account of defendants' arbitrary, capricious and unreasonable refusal to pay the claim; the sum of $8,000.00 as attorney's fees, together with legal interest thereon from the date of judicial demand, until paid; and certain court costs including the court reporter's fees for *782 the taking of the depositions of Dr. Meuleman and Dr. Blanda and cost of a copy of the deposition of Dr. Blanda in the amount of $76.44; the court reporter's fee for the taking of the deposition of Art Papizzo in the amount of $213.60; and the fee of Dr. Louis C. Blanda, Jr. in the amount of $300.00 for the taking of his deposition. Defendants timely appeal alleging that:
(1) The trial court erred in finding that the plaintiff could not return to his former employment without experiencing substantial pain;
(2) The trial court erred in finding that the defendants were arbitrary and capricious in the handling of this claim and awarding penalties and attorney's fees, and alternatively;
(a) The trial court erred in holding that H & S Construction was liable in solido for penalties and attorney's fees with its insurer, North West; and
(b) The trial court erred in awarding excessive attorney's fees; and
(c) The trial court erred in awarding legal interest on the attorney's fees from the date of judicial demand until paid; and
(d) The terminology the trial court used in the judgment pertaining to penalties of "12% on the total amount of damages due" is unclear;
(3) The trial court erred in awarding legal interest on a medical expense of $256.00 from the date of judicial demand, until paid;
(4) The trial court erred in taxing as court costs the court reporter's fees for the taking of a deposition and for a copy of that deposition; and also erred in taxing the cost of another deposition, which was not used in evidence; and
(5) The trial court erred in fixing an excessive award of $300.00 as a fee for the testimony of Dr. Blanda in his second deposition.
Plaintiff has answered the appeal alleging that the trial court erred in finding plaintiff to be only temporarily totally disabled instead of permanently totally disabled. Plaintiff also seeks additional attorney's fees for legal services rendered in connection with this appeal.

FACTS
On April 11, 1983, plaintiff was employed as a groundman for H & S Construction doing heavy manual labor at their asphalt plant. Plaintiff claims that at approximately 5:00 P.M. on that date, while in the course and scope of his employment, he slipped and fell six to eight feet from a straight steel ladder striking his lower back and hip, first on the ladder and then on the ground. Plaintiff immediately informed the control room operator about the accident and then went home since it was quitting time. The next day, plaintiff, upon arriving at work, reported the accident to the plant manager, Art Papizzo, and complained of pain that he said was caused by the fall.
Art Papizzo then sent the plaintiff to see Dr. Joseph Burley, who examined plaintiff and thereafter referred plaintiff to Dr. James Simon. Dr. Simon saw plaintiff on five or six occasions and conducted thermograms which indicated that plaintiff had nerve root irritation at two separate levels of his spine.
Plaintiff did not work for approximately three weeks following the accident. During this period, plaintiff was paid $244.00 per week, his normal pay for a 40 hour work week in lieu of workman's compensation benefits. Plaintiff returned to work around May 8, 1983 and was assigned to light duty in the control room. He remained at that job, earning his regular wages, until July 2, 1983, at which time he left to enter the hospital to have a CAT scan, a lumbar myelogram, tomograms, thermograms, and other medical tests performed. Plaintiff was then under the care of Dr. Louis Blanda, an orthopedic surgeon, to whom he had been referred by Dr. Simon.
The results and importance of these medical tests in July, 1983 were disputed. The CAT scan and myelogram were normal but the tomograms were positive for spondylolysis *783 at the L5/S1 level. Dr. Blanda, having viewed the results of the tests and having taken into consideration the symptoms complained of by the plaintiff, was of the opinion that a discogram should be performed to detect one or more herniated discs that he believed were present. The plaintiff, who could not afford to pay for such tests, made request in August, 1983 upon the claims adjuster, Mr. Arostequi, for authorization to have the discogram performed. Authorization for this test procedure was refused by Mr. Arostequi and the discogram was not performed until after the trial court suggested, in a pretrial conference held on January 20, 1984, that such a test be conducted. In February, 1984, the discogram was performed on the plaintiff and the results did in fact indicate the existence of two ruptured lumbar discs.
Weekly compensation benefits were paid to plaintiff from July 2, 1983 until August 26, 1983 when Mr. Arostequi received the discharge summaries from the hospital indicating a negative CAT scan and negative myelogram, along with the medical reports of Dr. Simon and Dr. Blanda, and a medical report of a Dr. Meuleman, who had been employed by the defendants and had examined the plaintiff on one occasion, indicating that plaintiff could return to work. At no time did either Dr. Simon or Dr. Blanda, the treating physicians, release the plaintiff to return to work.
On August 29, 1983, after his weekly compensation benefits were terminated, plaintiff, at the request of his employer, attempted to return to his former duties as groundman for H & S Construction. However, plaintiff was unable to continue working because of substantial pain, and after informing his supervisor, Art Papizzo, of his condition, plaintiff left work on the same day.
H & S Construction's response to plaintiff's claim for compensation benefits was that Dr. Meuleman's report was final and that the company would not pay plaintiff any more workman's compensation benefits and invited plaintiff to sue if he was dissatisfied. Since that time defendants have steadfastly refused to pay workman's compensation benefits to the plaintiff.
Plaintiff instituted this suit and after trial the trial court rendered judgment in favor of plaintiff as previously described. Defendants then timely appealed and plaintiff answered the appeal.

ASSIGNMENT OF ERROR NUMBER 1
The appellants, in their first assignment of error, contend that the evidence introduced at trial was insufficient to support a finding of plaintiff's disability due to substantial pain and argue that the trial court's finding of temporary total disability was clearly erroneous. The appellee, in response, not only maintains that the evidence overwhelmingly supports the trial court's finding, but also seeks to have the trial court's finding of temporary total disability amended to permanent total disability.
Defendants acknowledge that plaintiff had a pre-existing congenital defect, a unilateral spondylolysis at the L5/S1 level. Additionally, defendants acknowledge that the defect, whether symptomatic or not, would create a disabling condition, as far as heavy manual labor is involved, for which disability benefits would be due if it became sufficiently symptomatic to be disabling because of pain. Defendants challenge the trial court's finding that plaintiff's spondylolysis condition was aggravated by the fall and is in fact causing plaintiff sufficient pain to be disabling. Defendants contend that plaintiff has not met his burden of proving that he is unable to return to any gainful employment without suffering substantial pain which, under the "odd lot" doctrine, renders him unable to perform any job or service for which a market exists.
It is well settled in Louisiana that when a workman is unable to perform the duties necessary to any gainful employment or can only perform them in substantial pain as a result of a work-related injury, such workman is totally disabled for purposes of workmen's compensation. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); *784 Ewing v. Trend Drilling Co., 446 So.2d 530 (La.App. 3rd Cir.1984); Olson v. Ins. Co. of State of Pa., 471 So.2d 1151 (La. App. 3rd Cir.1985). Once the trial court has made factual findings as to disability and the length thereof, these determinations are entitled to great weight and are not to be disturbed absent a showing of manifest error. Mathews v. Louisiana Health Service & Ind. Company, 471 So.2d 1199 (La.App. 3rd Cir.1985); Venable v. Rawlings, Inc., 471 So.2d 1132 (La.App. 3rd Cir.1985); Ewing v. Trend Drilling Company, supra.
Defendants argue that plaintiff's evidence was insufficient to prove that he was experiencing sufficient pain to disable him from working. The trial court, however, based upon the testimony of the doctors (their depositions being admitted into evidence), found that plaintiff suffered from a pre-existing congenital defect of the spine which became symptomatic as a direct result of his fall, causing him to suffer substantial pain which prevents him from performing the duties of his former occupation or any other gainful employment. In Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37, at page 41, (La.App. 3rd Cir.1981), writ den. 412 So.2d 85 (La.1982), this court recognized that it was not error on the part of the trial court in "accepting and accrediting greater weight to the testimony of the treating physicians rather than that of specialists who were employed merely to evaluate the claimant." In the case at hand, though the testimony of Dr. Simon and Dr. Blanda (the doctors treating the plaintiff) conflict somewhat with that of Dr. Meuleman (the doctor employed by defendants on one occasion to evaluate plaintiff's claim), the trial court, after weighing all the medical evidence and testimony, determined that Dr. Simon's and Dr. Blanda's conclusions as to plaintiff's condition and its cause were more accurate. We find no manifest error on the part of the trial court in making this determination.
The trial court must consider both medical and lay testimony in determining disability; however, it is the trial court's function to determine the weight to be accorded to such testimony. Venable v. Rawlings, Inc., supra. In addition to the testimony (depositions) of doctors, the trial court also based its finding on the testimony of the plaintiff and his wife, as well as others, that the plaintiff did in fact experience substantial pain in not only performing the requisite duties entailed in his job, but also in less rigorous tasks such as walking, sitting, raking the lawn and riding in a vehicle, and that the only means of relieving his pain was by lying down for periods of several hours at a time. In addition, the trial judge personally viewed plaintiff's condition in the courtroom and, in his reasons for judgment, noted "Indeed this Court observed that Mr. Sharbono had difficulty standing up and sitting down and could not walk without limping."
The determination of whether or not a claimant experiences substantial pain while working is factual in nature and the determinations made by the trial court are entitled to great deference from reviewing courts. Olson v. Ins. Co. of State of Pa., supra. The credibility assigned by the trial judge to testimony in a workman's compensation proceeding is to be given great weight upon review. Roshto v. Wausau Ins. Companies, 457 So.2d 261 (La.App. 3rd Cir.1984), writ den., 460 So.2d 1047 (La.1984). We do not find that the trial court committed manifest error in finding that plaintiff must endure substantial pain in order to work.
The trial court obviously found it unnecessary to analyze plaintiff's substantial pain in the framework of the "odd lot" doctrine because it found plaintiff to be temporarily totally disabled under LSA-R.S. 23:1221(1). In Oster v. Wetzel Printing, Inc., 390 So.2d 1318, at page 1322 (La.1980), the Louisiana Supreme Court stated that the "odd lot" doctrine is intended to lessen the impact of the harsh language of the 1975 amendment to R.S. 23:1221 which states in effect that "[t]otal disability compensation can now be obtained only if the employee is unable `to engage in any gainful occupation for *785 wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged ...' La.R.S. 23:1221(2)...." Here, as the court found plaintiff to be temporarily totally disabled, it was therefore unnecessary for the trial court to consider the "odd lot" doctrine which is simply designed to make it easier for the claimant to prove permanent total disability.
Plaintiff has appealed the trial court's finding that he is temporarily totally disabled and contends that the trial court should have found him to be permanently totally disabled under the law applicable at the time of the accident, LSA-R.S. 23:1221(2). The law applicable in this case provides that once a worker is found, at the time of trial, to be temporarily totally disabled, he is entitled to a judgment for permanent total disability if the duration of the disability is indefinite or is not clearly indicated by the evidence.[1]Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Olson v. Ins. Co. of State of Pa., supra.
In this case, the treating physician, Dr. Blanda, to whose testimony the trial court gave great weight, testified that the duration of plaintiff's disability was uncertain. In addition, the weight of the testimony and evidence presented at trial indicated that plaintiff's condition had not improved since the time of the accident, but was in fact becoming worse. The evidence also indicated that surgical intervention would probably be necessary to improve the plaintiff's condition. From the evidence presented, it is clear that the duration of plaintiff's disability is indefinite. For this reason we find that it was clear error for the trial court to find only temporary total disability. We amend the trial court's judgment to find that the plaintiff is permanently totally disabled.
Plaintiff also contests the amount of benefits awarded by the trial court. The evidence in the record necessitates an amendment and clarification of the amount of benefits awarded by the trial court to the plaintiff. Although plaintiff was injured on April 11, 1983, he continued to be paid in lieu of workman's compensation benefits or earn his regular wages (in amounts in excess of the workman's compensation benefits to which he would have been entitled) from the date of the accident until July 2, 1983 when he left to enter the hospital. From July 2, 1983 until August 26, 1983, plaintiff received benefits in the amount of $203.34 per week until the benefits were terminated. The stipulated rate of benefits to which plaintiff was entitled is $204.00 per week. Plaintiff is entitled to this difference of $.66 per week. Therefore, we amend the trial court's judgment to award plaintiff workmen's compensation benefits for total permanent disability, in the amount of $204.00 per week, from July 2, 1983 and continuing during the period of his disability, together with legal interest from the due date of each weekly payment, until paid, subject to a credit for the amounts of compensation paid by defendants during the period of time from July 2, 1983 through August 26, 1983.
Defendants will have the opportunity to reopen this case, in accordance to law, for later evaluation of plaintiff's condition in the event his condition changes. Ewing v. Trend Drilling Co., supra.

ASSIGNMENT OF ERROR NUMBER 2
In their second assignment of error, the defendants contend that the trial court *786 erred in finding that defendants were arbitrary and capricious in the handling of this claim. The law in effect when this accident occurred, LSA-R.S. 22:658,[2] was interpreted by this Court to be that:
"... a compensation insurer is liable for a twelve percent penalty on unpaid compensation sums to which the worker is legally entitled, plus `reasonable' attorney fees for the collection of that sum, should the insurer not pay that sum to the worker within sixty days of the worker's claim, provided that such refusal to pay is `arbitrary, capricious, or without probable cuase.'" Olson v. Ins. Co. of State of Pa., 471 So.2d at 1151, at page 1155 (La.App. 3rd Cir.1983).
Penalties and attorney's fees are not available when the defendants have a legitimate basis for denying or terminating compensation benefits. Schepp v. Olin Corp., 445 So.2d 1280 (La.App. 3rd Cir.1984), writ den., 448 So.2d 117 (La.1984). But when defendants discontinue compensation benefits without legal justification and with full knowledge that the claimant is entitled to the benefits, then penalties and attorney's fees are warranted by statute.
Defendants argue that they are entitled to rely upon the report of Dr. Meuleman, their evaluating physician, which stated that plaintiff could return to work, as the basis for terminating plaintiff's compensation benefits in August, 1983. To justify their reliance on Dr. Meuleman's report, the defendants maintain that his report was based on the results of tests conducted by other doctors as well as Dr. Meuleman's own examination of the plaintiff. However, the weight of the evidence in this case points strongly to the conclusion that defendants were aware or should have been aware of plaintiff's clear right to worker's compensation benefits. The evidence does not support the defendants' assertion that the medical tests that were conducted on the plaintiff revealed that plaintiff was not suffering from substantial pain. Though the CAT scan and myelogram were negative, there were other indications that plaintiff was experiencing disabling pain. The thermograms conducted by Dr. Simon indicated nerve root irritation. Mr. Arostequi, agent for H & S Construction and North West, was in possession of these findings at the time he chose to terminate the benefits. In addition, Mr. Arostequi was also aware that neither Dr. Simon nor Dr. Blanda, plaintiff's treating physicians, had released plaintiff to go back to work and that Dr. Blanda wanted further tests to be made. The mere fact that a non-treating physician releases the employee to return to work does not justify the termination of worker's compensation benefits where the employer and its compensation insurer are aware of other facts which point to the employee's disability. Thibodeaux v. Dresser Industries, Inc., supra.
Mr. Arostequi was also aware of the request of both plaintiff and Dr. Blanda, for authorization for a discogram to be performed, but he refused to authorize such a test and it was not until this litigation began, and after a pre-trial conference, that the discogram was authorized by defendants and performed. The results of the discogram revealed that plaintiff suffered from two ruptured discs. Had Mr. Arostequi authorized this procedure initially, the results would certainly have substantiated plaintiff's right to compensation for this work related disability and defendants would clearly have had knowledge of plaintiff's disability at the time they chose to terminate the benefits. In Williams v. Commercial Union Assurance Co., 422 *787 So.2d 657 (La.App. 3rd Cir.1982), this court found a discogram to be a necessary test to be paid by employer when it was recommended by a doctor. Additionally, Mr. Arostequi terminated plaintiff's benefits without ever consulting the two physicians who were still treating the plaintiff on the date the benefits were terminated.
The employer, or at least the plant manager, Art Papizzo, personally witnessed the plaintiff's condition and his complaints of severe pain at the time plaintiff made an effort to return to his former job. Also the defendants' own evaluating physician admitted that plaintiff should not perform heavy manual labor. All of these facts that were established at trial show that the defendants knew that plaintiff was at least partially disabled, if not totally disabled. As the trial court stated in its Reasons for Judgment, "an insurer cannot cut off the weekly comp benefits when it knows that the employee is at least partially disabled, and when it does so, its arbitrary action will subject it to statutory penalties." Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952); Parish v. Standard Accident Insurance Company, 158 So.2d 892 (La.App. 3rd Cir.1963), writ den. 245 La. 803, 161 So.2d 278 (1964). We do not find that the trial court was manifestly in error in finding that defendants' termination of plaintiff's compensation benefits was arbitrary and capricious and in awarding penalties and attorney's fees to plaintiff.
Defendant, H & S Construction, argues alternatively that if this court finds that the trial court properly awarded penalties and attorney's fees, the trial court still erred in holding H & S Construction and its compensation insurer, North West, liable in solido for the twelve percent penalty and attorney's fees in light of the fact that the parties stipulated that North West was H & S Construction's workman's compensation insurer.
An employer, insured by a workman's compensation insurer, cannot be held liable for penalties and attorney's fees. LSA-R.S. 22:658; Wiley v. Southern Cas. Ins. Co., 380 So.2d 214 (La.App.3rd Cir. 1980). However, an employer is liable for attorney's fees and penalties for arbitrary and capricious denial of compensation benefits when the employer is self-insured or self-insured to some extent. LSA-R.S. 23:1201.2; Wactor v. Gurtler Hebert Const. Co., 343 So.2d 383 (La.App.4th Cir. 1977), writ den. 345 So.2d 59 (La.1977).
Despite the fact that it was stipulated at trial that North West was H & S Construction's compensation insurer, there was no stipulation regarding the terms of the workman's compensation insurance coverage or H & S Construction's self-insured liability for a portion of any workman's compensation benefits that might be due. The record reflects the following stipulation:
"BY MR. MORTON: And the other stipulation was as to the insurance coverage. The North West Insurance Company does have compensation coverage in this case.
BY MR. LAFARGUE: That is correct.
BY MR. MORTON: We have both the insured and the insurance company in the case. It really doesn't matter, but there is compensation coverage."
In regard to the amount of workman's compensation insurance coverage, on direct examination by defendants' counsel of Mr. Arostequi, the claims adjuster, he stated that H & S Construction was self-insured and liable for the first $35,000.00 of compensation benefits. There was absolutely no evidence presented at trial to show that H & S Construction had already satisfied payment of $35,000.00 of this claim. The employer relying on the existence of compensation insurance coverage to avoid liability for penalties and attorney's fees bears the burden of proving coverage. Daly v. L.E. Myers Const. Co., 419 So.2d 512 (La.App.2nd Cir.1982). H & S Construction cannot now hide behind its self-insurance arrangements for immunity for penalties and attorney's fees.
In light of the fact that Art Papizzo, H & S Construction's plant manager, *788 was also fully aware of plaintiff's condition, as has been discussed above, and the fact that H & S Construction was self-insured for part of any workman's compensation benefits due, it is not unreasonable to find that H & S Construction acted arbitrarily, capriciously and without probable cause in its handling of plaintiff's workman's compensation claim. We therefore find that the trial court did not commit manifest error in holding H & S Construction liable, in solido, with North West for penalties and attorney's fees.
Defendants also contend alternatively that the attorney's fees awarded in the amount of $8,000.00 were excessive. We find no merit to defendants' contention. The amount of attorney's fees is based upon the attorney's skill and the amount of work required of him. The trial court has much discretion in determining the reasonableness of attorney's fees. Wactor v. Gurtler Hebert Const. Co., supra. The affidavit submitted by plaintiff's counsel sets forth a rather conservative calculation of the hours that were spent working on this case. We will not second-guess the trial judge. The trial court did not abuse its discretion in awarding $8,000.00 in attorney's fees.
Defendants also contend alternatively that the trial court erred in holding that legal interest on attorney's fees awarded should run from the date of judicial demand. This Court has previously held that a worker's compensation claimant that is awarded attorney's fees is entitled to legal interest thereon from the date of judicial demand. George v. Marcantel Feed Stores, Inc., 446 So.2d 345 (La. App.3rd Cir.1984). Therefore, it was not manifest error for the trial court to award legal interest on attorney's fees from the date of judicial demand.
Defendants also allege alternatively that the terminology of the judgment relating to the twelve percent penalty is unclear. Defendants maintain that the penalties should be calculated on the basis of past due benefits under the Compensation Act, instead of on "total amount of damages due" as the trial court stated, which might be interpreted to include a calculation for penalties on benefits not yet due.
LSA-R.S. 22:658 clearly provides that the penalty is to be calculated only on the amount of benefits that are due at the time of rendition of any judgment. The statute specifically states that interest is to be awarded on the total amount of the loss. In Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37, at page 42, this court awarded twelve percent penalties calculated only on the amount of "weekly benefits which are overdue, until paid."
To avoid ambiguity and resultant confusion on the calculation of penalties, we will recast the trial court's award of penalties and order that there be judgment, as a penalty for defendants' arbitrary, capricious and unreasonable refusal to pay this claim, in favor of plaintiff and against defendants, in solido, in an additional amount of twelve percent on the total amount of the loss due, to be calculated at a rate of $204.00 per week for each week between July 2, 1983, the date from which benefits were first paid, and the date this judgment becomes final, subject to a credit for the amounts of workman's compensation benefits previously paid during this time by defendants to plaintiff.

ASSIGNMENT OF ERROR NUMBER 3
In their third assignment of error defendants contend that the trial court erred in awarding legal interest on a medical expense of $256.00 from the date of judicial demand made by the filing of suit. While it is true that plaintiff, by his original petition, sought payment of all of his medical expenses, the evidence does not show that this particular bill, for the fees of Lafayette Radiology Associates, was ever made known to defendant or tendered to the defendants until the time of trial. The evidence does not show that plaintiff ever demanded that defendants pay this bill or that defendants ever refused to pay this bill. When plaintiff's counsel introduced this medical bill in evidence he specifically *789 waived any claim for penalties on this particular bill. The trial court did not award penalties on the amount of this medical bill but did award legal interest on the bill from date of judicial demand, until paid. Since defendants were apparently never aware of this medical bill and apparently never refused to pay this medical bill it is inequitable for the trial court to award legal interest on this medical expense from date of judicial demand, until paid. We, therefore, reverse the trial court's award of legal interest on this medical expense from date of judicial demand, until paid, and render judgment awarding legal interest on this medical expense from the date of the rendition of the trial court judgment, until paid.

ASSIGNMENT OF ERROR NUMBER 4
In their fourth assignment of error defendants allege that the trial court erred in including as court costs the court reporter's fees, for the taking of the depositions of Dr. Blanda, Dr. Meuleman, and Art Papizzo, and the plaintiff's expense for a copy of Dr. Blanda's deposition. The court may tax the expense of the taking of a deposition as court costs, if the deposition has been introduced into evidence. See LSA-C.C.P. Art. 1920. It is clear from the record that the deposition of Art Papizzo was never entered into evidence. Therefore, the trial court erred in taxing $213.60, for the expense of taking Art Papizzo's deposition, as costs against the defendants. As the depositions of Dr. Blanda and Dr. Meuleman were introduced into evidence the trial court was not in error by taxing the court reporter's fees for the taking of these depositions as court costs against the defendants. We have not been cited to nor can we find any legal authority to permit the taxing as court costs of the expense for obtaining copies of depositions, which are introduced in evidence, but we find that it would be inequitable to tax the expense for obtaining copies of depositions, which are later introduced in evidence, as court costs. For this reason we will set aside the trial court's judgment taxing the expense of $76.44 for plaintiff's copy of Dr. Blanda's deposition as court costs against the defendants. We, therefore, reverse the trial court's judgment to exclude the expense of the taking of Art Papizzo's deposition and to exclude the expense for the plaintiff's copy of Dr. Blanda's deposition from the court costs taxed to the defendants.

ASSIGNMENT OF ERROR NUMBER 5
In their last assignment of error the defendants contend that the trial court's award of $300.00 for the fee charged by Dr. Blanda for the taking of his second deposition is excessive. The trial court has broad discretion in the determination and awarding of both court costs and the fixing of expert witnesses fees. Schepp v. Olin Corp., supra. We do not find that the trial court abused its discretion in fixing a fee of $300.00 to be paid to Dr. Blanda for the taking of his second deposition and taxing that fee as court cost to be paid by the defendants.

ATTORNEY'S FEES ON APPEAL
In his answer to this appeal, plaintiff seeks an additional $2,000.00 in attorney's fees for legal services rendered in connection with this appeal. This court is of the opinion that the trial court's initial award of $8,000.00 as attorney's fees is adequate to include attorney's fees on appeal. We therefore find that plaintiff is not entitled to any additional award of attorney's fees on appeal.

JUDGMENT
For the reasons set forth above, the judgment of the trial court is affirmed in part, amended in part, and rendered. We reverse and set aside the portion of the trial court's judgment in favor of plaintiff and against defendants, in solido, finding plaintiff temporarily totally disabled from the accident of April 11, 1983, and render judgment in favor of plaintiff and against defendants, in solido, finding plaintiff totally permanently disabled from the accident of April 11, 1983. We further set aside the portion of the trial court's judgment awarding *790 plaintiff judgment against defendants, in solido, for weekly benefits and recast the judgment to render judgment in favor of plaintiff and against defendants, in solido, ordering them to pay plaintiff workman's compensation benefits, in the amount of $204.00 per week, from July 2, 1983 and continuing during the period of his disability, together with legal interest from the due date of each weekly payment, until paid, subject to a credit for the amounts of compensation paid by defendants during the period from July 2, 1983 through August 26, 1983. We set aside the portion of the trial court's judgment awarding penalties to plaintiff and against defendants, in solido, and recast the judgment to render judgment in favor of plaintiff and against defendants, in solido, in an amount of twelve percent on the total amount of the loss due, as penalties for defendants' arbitrary, capricious and unreasonable refusal to pay this claim, to be calculated at the rate of $204.00 per week between July 2, 1983, the date on which defendants first paid plaintiff workman's compensation benefits, and the date this judgment becomes final, subject to a credit for the amounts of workman's compensation benefits previously paid during this time by defendants to plaintiff. We set aside the portion of the trial court's judgment awarding plaintiff judgment against defendants, in solido, in the sum of $256.00, together with legal interest thereon from date of judicial demand, until paid, and render judgment in favor of plaintiff and against defendants, in solido, in the sum of $256.00 together with legal interest from May 17, 1984, the date of rendition of the trial court judgment, until paid. We affirm the portion of the trial court's judgment taxing the expense of the taking of the depositions of Dr. Blanda and Dr. Meuleman and affirm the fixing of a fee of $300.00, for the taking of the deposition of Dr. Blanda, and the taxing of this fee as cost. We reverse and set aside the portion of the trial court's judgment in favor of plaintiff and against defendants, in solido, taxing $213.60 as costs for the taking of Art Papizzo's deposition and taxing $76.44 as costs for the plaintiff's copy of Dr. Blanda's deposition. We affirm the portion of the trial court's judgment awarding plaintiff the sum of $8,000.00 as attorney's fees and render judgment denying plaintiff additional attorney's fees for services rendered on this appeal.
All costs of this appeal are assessed to the defendants-appellants.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
NOTES
[1] The rule has since been changed by legislation. Footnote 2 in Olson v. Ins. Co. of State of Pa., 471 So.2d 1151, at page 1154-1155, noted that:

"The 1983 amendments [effective July 1, 1983] to the workers' compensation statutes legislatively overrule this facet of our jurisprudence. Under the new law, the worker must prove, `by clear and convincing evidence, unaided by any presumption of disability,' that the total disability is permanent. La.Rev.Stat. 23:1221(2)(c). A recent case interpreting this statutory provision opines that, in cases analogous to the present, the worker would be entitled to temporary total disability benefits, with the possibility of amending the judgment pursuant to Louisiana Revised Statute 23:1331, should the recovery of the worker not occur. Brewster v. Manville Forest Products Corp., 469 So.2d 340, 344-346 (La.App.2d Cir. May 8, 1985)."
[2] The law has since been changed by legislation. Footnote 3 in Olson v. Ins. Co. of State of Pa., 471 So.2d 1151 at page 1155, noted that:

"The 1983 amendments [effective July 1, 1983] to the workers' compensation statutes have ended the utility of section 658 for compensation cases. As amended, Louisiana Revised Statute 23:1201.2 governs the issue of arbitrary and capricious late or nonpayment for both insurers and uninsured employers. Section 1201.2 prohibits the use of revised statute 22:658 in worker's compensation cases, and section 1201.2 does not provide for penalties, only for attorney fees. See Mallet v. La. Nursing Homes, Inc., 459 So.2d 178, 181 n. 2 (La.App.3d Cir.1984)."