649 So.2d 987 (1994)
Roderick K. STUTES, Plaintiff-Appellee,
v.
KOCH SERVICES, INC., Defendant-Appellant.
No. 94-782.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Rehearing Denied March 1, 1995.
*989 Thomas Allen Filo, Lake Charles, for Roderick K. Stutes.
Jacqueline L. Egan, Lafayette, for Koch Services, Inc.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
THIBODEAUX, Judge.
This is a workers' compensation case. The employer, Koch Services, Inc., appeals a judgment in favor of the plaintiff-employee, Roderick Keith Stutes, which awarded States supplemental earnings benefits and medical benefits in connection with his development of chronic myelogenous leukemia (CML) caused by exposure to benzene.
In awarding supplemental earnings benefits based on a zero earnings calculation, the administrative hearing officer from the Office of Workers' Compensation Administration found a causal link between Mr. Stutes's exposure to benzene in the workplace and CML.
Koch Services appeals, alleging two assignments of error. Mr. Stutes has answered the appeal, requesting penalties and reasonable attorney's fees. For the reasons below, we affirm the hearing officer's ruling on causation, medical benefits, and supplemental earnings benefits. We reverse and award penalties to Mr. Stutes on benefits which were due from January, 1993 through July, 1993. We also award attorney's fees in the amount of $7,500.00 for work performed at both the trial level and in our court.

ISSUES
The issues presented for review are:
1) whether Mr. Stutes proved by a preponderance of the evidence that his chronic myelogenous leukemia was an occupational disease caused by his employment exposure to benzene;
2) whether Mr. Stutes is entitled to supplemental earnings benefits; and,
3) whether the hearing officer erred by failing to award penalties and attorney's fees.

FACTS
For four years, Roderick Keith Stutes worked as a truck driver for Koch Services hauling primarily crude oil. In November, 1992, Mr. Stutes was diagnosed with chronic myelogenous leukemia (CML); he was twenty *990 nine years old. During his employment with Koch Services, Mr. Stutes made numerous hauls from approximately 120 different storage facilities on crude oil leases to various unloading terminals.
Mr. Stutes was exposed to benzene on a daily basis. At the storage facilities, his duties were to gauge, sample, test, and load the crude oil from the storage tanks into his tank truck. Of the 120 leases for which he was responsible, 111 were manual or non-metered leases. A non-metered lease requires manual gauging and sampling of the oil. When performing this manual gauging, Mr. Stutes spent from five to twenty minutes on top of the storage tank with the hatch of the tank open. He was also exposed to crude oil fumes whenever he loaded his tank truck. The loading procedure usually took forty-five minutes.
Mr. Stutes discovered he had CML when he went to a doctor for pain and swelling in his wrists and hands. Mr. Stutes is not working at this time.

LAW & ANALYSIS

I. OCCUPATIONAL DISEASE
On appeal, Koch Services contends Mr. Stutes did not meet his burden of proof of causation. Koch Services admits the causal connection between benzene exposure and acute myelogenous leukemia (AML) has been clearly established, but the causal connection between Mr. Stutes's form of leukemia, CML, has not been clearly linked to benzene exposure.
The trial court's determination of whether the worker has discharged his burden of proof is a factual determination which should not be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). Where there are two permissible views of the evidence, a factfinder's choice can virtually never be manifestly erroneous or clearly wrong. Id.; Rosell v. ESCO, 549 So.2d 840 (La.1989).
La.R.S. 23:1031.1 provides every employee disabled by an occupational disease shall be entitled to compensation as if he received personal injury by an accident arising out of and in the course of his employment. La. R.S. 23:1031.1(B) defines an occupational disease as a disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
The initial question is factual, i.e., whether the plaintiff sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular occupation, process, or employment. The plaintiff is not required to prove the causal connection with absolute certainty. The plaintiff must establish the cause of his disability by a reasonable probability. Peck v. Procter & Gamble Mfg. Co., 586 So.2d 714 (La.App. 3rd Cir.), writ denied, 590 So.2d 86 (1991).
In this case, the hearing officer found Mr. Stutes had proven by a preponderance of the evidence the causal relationship between his disease and his employment.
Mr. Stutes's treating physician, Dr. Karel A. Dicke, a hematologist-oncologist who specializes in bone marrow transplants, testified Mr. Stutes's CML was more probably than not caused by exposure to benzene. According to Dr. Dicke, only approximately 10% of CML cases occur in patients under thirty years old.
Although the exact cause of CML is not known, the incidence is increased when an individual is exposed to ionizing agents and to agents which damage DNA. Benzene is known to damage DNA, which leads to the development of abnormal cells. Acute myelogenous leukemia is caused by benzene exposure, and Dr. Dicke testified any attempt to draw a line between AML and CML is artificial.
According to the defendant's medical expert, Dr. Douglas A. Swift, a specialist in occupational medicine, and to defendant's certified industrial hygienist, Allen Jurisich, Mr. Stutes's CML was not caused by benzene exposure for three reasons. Mr. Stutes's benzene exposure levels were too low; there is no causal connection between benzene exposure and CML; and the latency *991 period (time between exposure and development of the disease) was too short.
Mr. Jurisich conducted a workplace exposure assessment by monitoring a co-worker to determine Mr. Stutes's benzene exposure limits. The results of this assessment indicated levels of benzene exposure at or below the permissible OSHA standard of one part per million. Dr. Swift classified Mr. Stutes's exposure level as normal or not beyond what is expected in the normal population. However, at the hearing, testimony presented established Mr. Stutes's manner of performing gauging and testing resulted in longer exposure. Because Mr. Stutes was never monitored, there is no way to determine his level of exposure over his four years of employment. The record does establish daily exposure to benzene.
In Mr. Jurisich's opinion the relationship between benzene exposure and CML is plausible, but not proven. Dr. Swift noted the majority of reports connect benzene exposure to AML. However, Dr. Swift admitted the classification of AML or CML could be better explained by a hematologist/oncologist.
Dr. Swift found Mr. Stutes's latency period was too short for benzene exposure to have caused his CML. He calculated his latency period based on less than two and one-half years exposure. The record does not support this finding. He was exposed to benzene almost daily for four years. When Mr. Stutes spoke to Dr. Swift he miscalculated his time spent hauling crude oil. Dr. Swift said the latency period for leukemia was at least five years. At the hearing, Mr. Jurisich testified occupationally-induced cancers usually involve one or two decades of exposure. Mr. Jurisich told CIGNA's insurance adjustor the latency period for benzene exposure was two to ten years. While Mr. Stutes's latency period of four years may be on the low end of the spectrum, the time frame for development of leukemia is not unreasonable based on evidence in the record.
The hearing officer correctly assessed the above medical and lay testimony. The rule is well settled that the testimony of the treating physician is to be given more weight than the testimony of a physician who examines the patient only once or twice. However, the treating physician's testimony must also be weighed in light of other credible evidence. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982); Latiolais v. Jernigan Bros., Inc., 520 So.2d 1126 (La.App. 3rd Cir.1987). The weight to be afforded such testimony is largely dependent upon the physician's qualifications and facts upon which his opinion is based. Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2d Cir.1992).
The hearing officer was not clearly wrong in her determination that Mr. Stutes established the causation of his occupational disease by a reasonable probability.

II. SUPPLEMENTAL EARNINGS BENEFITS
The hearing officer awarded supplemental earnings benefits to Mr. Stutes based on a zero earnings calculation. Mr. Stutes has not worked since his diagnosis of leukemia. Dr. Dicke and Dr. Swift agree he should not return to his former employment with Koch Services. Defendant argues since Mr. Stutes did not establish he could not work, then they are not required to prove he is physically able to perform a certain job, and the job was offered or available.
Supplemental earnings benefits were established in 1983 to replace lost wages for partially disabled employees. The benefits are designed to replace lost earning capacity of workers who do not fall under the definition of total disability. When an injured employee is able to engage in a gainful occupation, but because of his work-related disability is unable to earn wages at the level he was earning prior to his injury, then he is classified as partially disabled. When the employee's partial disability is such that he is unable to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury, then the employee is entitled to supplemental earnings benefits, calculated according to a formula relating to his pre-injury wages and the wages he is able to earn in any employment or self-employment after the injury. La.R.S. 23:1221(3)(a); *992 Allen v. City of Shreveport, 618 So.2d 386 (La.1993).
In order to recover SEB, an employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La.R.S. 23:1221(3)(a); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Peveto v. WHC Contractors, 630 So.2d 689 (La.1994).
Once the employee has satisfied this burden, then the burden shifts to the employer to establish the employee is earning less than he is able to earn by showing the employee is physically able to perform a certain higher paying job and that the job was offered to him or was available to him in a reasonable geographic location. La.R.S. 23:1221(3)(c)(i); Allen; Peveto, supra.
We have determined Mr. Stutes established the causation of his occupational disease by a reasonable probability. We find under the cases cited above that Mr. Stutes has proven by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of his pre-illness wages. The defendant does not dispute Mr. Stutes's diagnosis of chronic myelogenous leukemia. He faces extensive medical treatment, including bone marrow transplants. We do not know what the outcome of these treatments will be for Mr. Stutes.
Before his diagnosis, he was earning approximately $30,000.00 per year as a truck driver. Mr. Stutes completed the tenth grade and did not receive his GED. He is not able to return to his former employment due to the possibility of repeated benzene exposure.
When the employee is not working or is earning less than the employee is able to earn as the result of a job-related disability, then it is the employer's burden to establish earning capacity. Daigle; Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52 (La. 1993); Hebert v. Grey Wolf Drilling Co., Inc., 611 So.2d 674 (La.App. 3rd Cir.1992).
The defendant did not present any evidence relating to Mr. Stutes's employability. Because the defendant did not meet the burden imposed under La.R.S. 23:1221(3)(c)(i), we find the hearing officer correctly awarded Mr. Stutes SEB based upon a zero earnings calculation.

III. PENALTIES AND ATTORNEY'S FEES
The hearing officer found Koch Services was not arbitrary and capricious in denying benefits, and did not award penalties or attorney's fees.
Mr. Stutes claims he is entitled to penalties and attorney's fees for failure to pay weekly benefits. An employer is liable for statutory penalties for withholding benefits without evidence to "reasonably controvert" the employee's right to compensation and medical benefits. La.R.S. 23:1201. Additionally, attorney's fees are recoverable if the employer acted arbitrarily, capriciously, or without probable cause in refusing to pay benefits. La.R.S. 23:1201.2.
We find based on the medical evidence regarding Mr. Stutes's condition that from January, 1993, through July, 1993, the causation of his occupational disease was not reasonably controverted. In January, 1993, Dr. Dicke sent a report to Koch Services which indicated Mr. Stutes's CML was caused by benzene exposure. In late July, 1993, Dr. Swift's report indicated he did not believe Mr. Stutes's CML was caused by benzene exposure. Koch relied on the opinion of its industrial hygienist in the interim. For this seven month period, there was no contrary medical expert opinion. Therefore, Koch Services is liable for statutory penalties for this seven-month time period.
Mr. Stutes is also entitled to a judgment of attorney's fees under the authority of La.R.S. 23:1201.2. We find $7,500.00 to be a reasonable amount in light of the effort, evidenced by the record, put forth by Mr. Stutes's counsel in preparing this case for trial and appeal. See Thibodeaux v. Woman's Hosp. of Acadiana Foundation, Inc., 578 So.2d 213 (La.App. 3rd Cir.1991) and Sharbono v. H & S Construction Co., 478 So.2d 779 (La.App. 3rd Cir.1985). This case was especially difficult and was well presented by both sides at the trial and at the *993 appellate level. Our job was made somewhat less difficult because of the quality of advocacy and also because of the excellent analysis of the factual and legal contexts by the hearing officer.

DECREE
For the reasons stated above, the hearing officer's judgment is affirmed on the issues of causation and plaintiff's entitlement to supplemental earnings benefits. We reverse the judgment of the hearing officer and award penalties from January, 1993, to July, 1993. We also award $7,500.00 in attorney's fees for work at the trial and appellate levels.
All costs of the appeal are assessed to Koch Services.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.