IDOUCET, Chief Judge.
An employer appeals the ruling of the hearing officer finding that the claimant, Ricky Simpson, defeated the presumption of intoxication provided for in La.R.S. 23:1081.
On October 27, 1993, Simpson began work as a welder at the Jeanerette Sugar Company (JSC). On that same day, David Thibo-daux, the assistant to the general manager of JSC, informed him of the company policies and safety concerns, including its drug policy. JSC hired him for the grinding season with the possibility of permanent employment in the future. He was assigned to do welding on the rollers used to grind the cane. There was a-catwalk running.alongside the rollers. Although the testimony indicates that other welders worked from the catwalk, Simpson got off the catwalk and ^welded while sitting on a mill head. His supervisor, Glenn Martin, saw him doing this and said nothing to discourage him from working in this position. Simpson stated that he was sitting at an angle to the roller working to the right with his attention directed to the right when he felt heat and explosion came from behind him to the left. When he realized that he had caught on fire he rolled across the catwalk and ran out of the mill where someone poured water on him. He was taken to the Iberia General Hospital Emergency Room and was admitted to the hospital. Late that evening a nurse took a urine sample for a drug test. Simpson testified that he used a urinal that was already in the room and that the nurse poured into a bottle and sealed it. Simpson signed the bottle. Several days later, Simpson was informed the test was positive for cocaine. He stated at trial that he was given the opportunity to be retested but was also told that too much time had passed for the retest to show whether he had cocaine in his system at the time of the accident. Dr. Padgett, the medical review officer, testified that cocaine is used in emergency rooms as a topical anesthetic for certain skin injuries. This use, he testified, could result in a positive cocaine test result. While Simpson’s emergency room record does not specifically mention cocaine, it is clear that he was given a number of narcotic drugs for pain.
On December 22, 1993, Simpson filed a disputed claim for compensation. JSC answered the claim alleging that Simpson was not entitled to compensation because he had tested positive for drug usage and the drug usage was the cause of the accident causing the injury to Simpson.
After a hearing, the hearing officer ruled in favor of Simpson. In written reasons the hearing officer stated that JSC was entitled to a presumption of intoxication. However, she found that the medical review officer did not carry out his duties as outlined in La.R.S. 23:1081(9). As a result, she found that the drug testing did not meet the standards set forth in La.R.S. 23:1081. Consequently, she *1089 concluded that the ^presumption of intoxication had been defeated. Finally, she found that the claimant had shown by clear and convincing evidence that intoxication was not a contributing cause of the accident. JSC appeals. Its assignments of error fall essentially into three categories, those dealing with the drug testing and review process, those asserting error in the hearing officer’s finding concerning whether Simpson successfully rebutted the presumption of intoxication; and one concerning the duration of Simpson’s disability.
PRESUMPTION OF INTOXICATION
La.R.S. 28:1081 provides in pertinent part that:
“(1) No compensation shall be allowed for an injury caused:
[[Image here]]
(b) by the injured employee’s intoxication at the time of the injury, unless the employee’s intoxication resulted from activities which were in pursuit of the employer’s interests or in which the employer procured the intoxicating beverage or substance and encouraged its use during the employee’s work hours, or
⅜ ⅝ ⅜ ⅜ ⅜ ⅜
(2) In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for any cause or reason set forth in this Subsection, the burden of proof shall be upon the employer.
(5) If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III, TV, and V, it shall be presumed that the employee was intoxicated.
(6) The foregoing provisions of this Section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the employee was under the influence of alcoholic beverages or any illegal or controlled substance.'
(7)(a) For purposes of this Section, the employer has the right to administer drug and alcohol testing or demand that the employee submit himself to drug and alcohol testing immediately after the alleged job accident.
⅜ ⅜: ⅜ ⅜ ⅜ ⅜
(8) In order to support a finding of intoxication due to drug use, and a presumption of causation due to such intoxication, the employer must prove the employee’s use of the controlled substance only by a preponderance of the evidence. In meeting this burden, the results of employer-administered tests shall be considered admissible evidence when those tests are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer.
(9) All sample collection and testing for drugs under this Chapter shall be performed in accordance with rules and regulations adopted by the director which ensure the following:
(a) The collection of samples shall be performed under reasonably sanitary conditions.
(b) Samples shall be collected and tested with due regard to the privacy of the individual being tested, and in a manner reasonably calculated to prevent substitutions or interference with the collection or testing of reliable samples.
(e) Sample collection shall be documented, and the documentation procedures shall include:
(I) Labeling of samples so as reasonably to preclude the probability of erroneous identification of test result; and
(ii) An opportunity for the employee to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information.
(d) Sample collection, storage, and transportation to the place of testing shall be performed so as reasonably to preclude the probability of sample contamination or adulteration; and
*1090 (e) Sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include verification or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for any disqualification pursuant to this Section. Test results which do not exclude the possibility of passive inhalation of marijuana may not be used as a basis for disqualification under this Chapter. However, test results which indicate that the concentration of total urinary cannabi-noids as determined by immunoassay equals or exceeds fifty nanograms/ml shall exclude the possibility of passive inhalation.
* * * * * *
(12) Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.”
JSC asserts that the hearing officer erred in failing to find that the defendant met its burden of proof concerning the presumption of intoxication so that the burden of proof shifted to Simpson to show that the intoxication was not a contributing cause of the accident. This is an incorrect interpretation of the hearing officer’s findings as reflected in her written reasons for judgment. The hearing officer in her written reasons specifically found that: “The employer met [its] burden of proof by a preponderance of the evidence to obtain the presumption of intoxication, if proper procedures were followed. However, this merely shifts the burden of proof back to the claimant to prove that intoxication was not a cause of the accident.” She further stated that: “[T]he claimant has proven by clear and convincing evidence that the intoxication was not a contributing cause to the accident.” It is clear from this that the hearing officer found that while JSC was entitled to the presumption that Simpson was intoxicated at the time of the accident and that the intoxication caused the accident, Simpson successfully rebutted that presumption by showing that the intoxication was not a contributing cause of the accident.
“The trial court’s determination of whether the worker has discharged his burden of proof is a factual determination which should not be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). Where there are two permissible views of the evidence, a factfinder’s choice can virtually never be manifestly erroneous or clearly wrong. Id.; Rosell v. ESCO, 549 So.2d 840 (La.1989).”
Stutes v. Koch Services, Inc., 94-782, p. 3 (La.App. 3 Cir. 12/7/94), 649 So.2d 987, 990, writ denied, 95-0846 (La.5/5/95), 654 So.2d 335.
1¡Accordingly, we will examine for manifest error the hearing officer’s finding that Simpson successfully rebutted the presumption of intoxication by showing that the intoxication did not cause the accident. At trial, Simpson elicited testimony from several witnesses who had observed him immediately before, during, and after the alleged accident. These witnesses included the assistant general manager, David Thibodaux, and Simpson’s immediate supervisor, Glenn Martin. Both testified that they observed nothing about Simpson’s behavior or demeanor that would lead them to the conclusion that Simpson had been taking or was under the influence of drugs or alcohol. Both testified that they would not have allowed Simpson to work if they had believed he was intoxicated. As a result, the evidence shows that Simpson did not exhibit any behavioral patterns that clearly demonstrated a man with impaired or loss of mechanical or thought control.
We find that the hearing officer was not clearly wrong in finding that Simpson rebutted the presumption created by La.R.S. 23:1081(7)(b). Dr. Padgett testified that the effect of ingesting cocaine is of limited duration and yet the drug may be present in the person’s body for a number of days after the *1091 effect has worn off. The testimony elicited by appellant clearly preponderates in favor of the conclusion that, although drug residue was found in Simpson’s body, Simpson was not intoxicated at the time of the accident and that intoxication was not a contributory cause of the accident. Not one witness, even those adverse to Simpson, could testify to any behavior that would show a contrary conclusion. See Austin v. Fibrebond Corp., 25, 565 (La.App. 2 Cir. 2/23/94), 638 So.2d 1110, writ denied, 94-1326 (La.9/2/94), 643 So.2d 149; and Johnson v. Riverplex Intern., 609 So.2d 1005 (La.App. 5 Cir.1992), writ denied, 613 So.2d 627 (La.1993).
Accordingly, we find no error in the hearing officer’s conclusion that Simpson succeeded in showing that intoxication was not a contributing factor in the accident. ^Having so found, we need not consider the appellant’s assignments of errors asserting that the hearing officer erred in finding deficiencies in the drug testing and review process because this finding has rendered those issues moot.
DURATION OF DISABILITY
Finally, JSC asserts that, because no evidence was introduced that Simpson was disabled after his release from the hospital, the hearing officer erred in granting Simpson temporary total disability benefits from October 27, 1993, through August 27, 1994, for any documented period of disability.
The record establishes that Simpson suffered second and third degree bums on his face, arms and legs in the accident of October 27,1993. Simpson was released from the hospital on November 5, 1993. It was his testimony that he could not work for ten months after his release. A narrative report from the treating physician Dr. Borland stated that Simpson was told to return to Dr. Borland’s office for further treatment. The report further indicated that Simpson might need skin grafts. Simpson testified that he had not sought further treatment because he was not receiving worker’s compensation and could not pay the doctor. The record shows that Simpson was disabled by the accident and may again be disabled if skin grafts are required. However, there is not sufficient evidence of record to establish the duration of disability. Therefore, we will reverse the hearing officer’s finding as to the duration of disability and remand the case for an eviden-tiary hearing to establish the duration of Simpson’s disability.
Accordingly, the judgment of the hearing officer is affirmed with regard to Simpson’s entitlement to worker’s compensation benefits. With regard to the duration of disability, the matter is remanded to the hearing officer for a determination of the duration of the disability.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
AMY, J., dissents.