STEWART, Judge.
Defendant, Ramsey’s Trailways, Inc., appeals from the decision of the worker’s compensation hearing officer’s finding that *669 plaintiff, Lawrence Thomas, Jr., was injured in the course and scope of his employment, and was entitled to benefits, medical expenses, penalties and attorney fees. We amend and, as amended, affirm.

FACTS

In April 1990, Lawrence Thomas, Jr., began his employment with Ramsey’s Trailways, Inc. (Ramsey’s). Thomas’ duties included washing and cleaning the buses inside and out, and sweeping, mopping and shining the chrome. In addition to his cleanup duties, Thomas assisted in painting, carpentry and mechanical work.
On April 24, 1991, Thomas was injured when a bus he was underneath fell on his knee. According to Thomas, Mrs. Ramsey had instructed him to assist Ellis Ramsey, a bus driver. Ellis directed Thomas to hold an axle. Thomas was underneath the bus holding the axle while Ellis was hitting it. Thomas stated that he had been under the bus for approximately 15 to 20 minutes when the bus fell off the blocks and crushed his knee. Thomas also testified that he twisted his knee in an attempt to free himself from the bus.
An ambulance and the police rescue unit were called. Thomas was taken by ambulance to St. Francis Medical Center in Monroe, Louisiana. Thomas’ knee was examined and x-rayed. He was given an ice pack, crutches, and a knee brace prior to his release from the hospital.
On May 9, 1991, Thomas went to see Dr. Charles R. Hand, an orthopedic surgeon, because of continued pain in his right knee. Dr. Hand took an x-ray, performed a physical examination, and concluded that Thomas suffered a tear of the lateral meniscus. Dr. Hand recommended arthroscopic surgery in order to correct the problem. Dr. Hand cancelled the surgery because Ramsey’s refused to pay for the surgery and did not have insurance coverage. Dr. Hand then referred Thomas to Conway Hospital, the local charity hospital.
On May 20, 1991, Thomas filed the instant claim for worker’s compensation against his employer, Ramsey’s. In his petition, Thomas alleges that he was injured when the bus fell on his knee. He also alleges that he reported the accident to Mr. and Mrs. Hilton Ramsey, the owners of Ramsey’s.
At the hearing, Ellis Ramsey testified that he and B.J. Davis, the mechanic, had stopped work on the bus and he was gathering his tools to work on another bus when he heard the bus fall. Ellis denied both hitting the axle with the hammer and instructing Thomas to get under the bus to assist him. Ellis further stated that he had instructed Thomas to clean the inside of the bus and did not know Thomas was under the bus until he heard him screaming. Ramsey stated Thomas did not normally do any mechanical work or help do mechanical work. Ramsey had not known Thomas to ever do anything except clean up the buses.
B.J. Davis, the mechanic, stated that he never asked Thomas to assist him with mechanical work because “[w]ell, I got chewed out one time because I used him and he got the bus dirty.” Davis testified that he left major mechanical work incomplete until Ellis Ramsey was also in the shop to help finish the job. If he ever required assistance when Ramsey was out, Davis got help from an employee across the street. When the accident occurred, Davis placed a jack under the bus to keep it from falling further on Thomas. He stated he tightened the jack up but that it was unnecessary to raise the bus on the jack in order to free Thomas.
Hilton Ramsey, president of Ramsey’s, testified that Thomas had no duties requiring him to be under a bus and that his sole duties were to clean the inside of the bus. Although he acknowledged that Thomas was the low man on the totem pole at Ramsey’s, he stated that he would not expect Thomas to do what other people asked him to do.
Dr. Charles R. Hand, a board certified orthopedic surgeon, testified that he saw Thomas on May 9, 1991, for complaints of knee pain, swelling, difficulty in walking and stiffness when sitting. Thomas reported to the doctor that he had been struck in *670 the knee with an axle and that he had twisted his knee. Thomas had no history of past knee problems, nor had he returned to work since the April 24 accident. Dr. Hand found mild to moderate swelling in the joint. The tibial grind test was positive for lateral compartment pain which suggested a tear of the cartilage. Dr. Hand reviewed the x-rays from St. Francis which were normal.
Dr. Hand recommended arthroscopic surgery which would enable him to examine the inside of the joint and make any repairs to injuries he located. He acknowledged that diagnosis from an external examination is rather poor. Dr. Hand testified that the most effective way of diagnosing internal joint injuries is through arthroscopic surgery.
Dr. Hand said that some torn cartilage tended to get better on its own while other cartilage tears had a tendency to get worse if not treated. Dr. Hand stated that such an injury probably would interfere with Thomas’ ability to work, at least initially, until it had a chance to settle down. Dr. Hand reviewed the medical records from Thomas’ emergency room visit and noted that he was instructed to wear the knee brace seven (or nine) days plus use crutches and to elevate the leg.
After examining the testimony and evidence, the hearing officer found that Thomas was injured in the course and scope of his employment and that this injury prevented him from performing his job duties from the date of the accident on April 24, 1991 until he is able to return to gainful employment. The hearing officer awarded Thomas benefits in the amount of $180 per week, plus penalties and attorney fees of $750 for the failure and refusal by the defendant to pay weekly benefits and to provide medical treatment for Thomas. This appeal ensued.

LAW

It is a well-settled legal principle that the factual findings in worker’s compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact’s factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact’s findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Manson v. City of Shreveport, 577 So.2d 1167 (La.App.2d Cir.1991), writ denied, 580 So.2d 928 (La.1991); Harris v. General Motors, 577 So.2d 1160 (La.App.2d Cir.1991); Brown v. Manville Forest Products Corporation, 565 So.2d 496 (La.App.2d Cir.1990), writ denied, 567 So.2d 1127 (La.1990). The appellate standard of review applicable to worker’s compensation hearing officers’ findings and judgments is the manifest error-clearly wrong test. Key v. Insurance Company of North America, 605 So.2d 675 (La. App.2d Cir.1992).

ARISING OUT OF AND IN THE COURSE AND SCOPE OF EMPLOYMENT

On appeal, Ramsey’s contends that Thomas failed to show that his employment required him to be under the bus therefore, the accident did not arise out of the course and scope of employment and he is not entitled to worker’s compensation benefits. We disagree.
This court addressed a similar issue in Duncan v. South Central Bell Telephone, 554 So.2d 214 (La.App.2d Cir.1989), writ denied, 559 So.2d 125 (La.1990). We noted that the two elements, “arising out of” and “in the course of,” should not be treated as entirely separate requirements, but should be understood as closely intertwined issues that may be useful to illuminate the common sense, practical question of whether an injury bears a significant relationship to the business operation. Each case must be determined from its own facts.
Further, Duncan, supra, at 219, states: [T]o “arise out of” the employment, the accident must be the result of some risk to which the employee was subjected in the course of his employment and to *671 which he would not have been had he not been so employed. Time, place and circumstance would determine this. To this must be added the consideration of the character of the risk, which means the accident must be the result of some risk to which the employee was subjected in the course of his employment and to which he would not have been subjected if he had not been so employed. The nature of the employment must be such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.
[[Image here]]
... [A]n accident occurred “in the course of” employment when it happened during the time of employment and at a place contemplated by the employment.
In the instant case, the evidence shows that Thomas’ accident occurred during the time of his employment at a place contemplated by his employment. Moreover, had Thomas not been employed to clean up and do other work at the bus company, he would not have been subjected to the risk of a bus axle falling on his knee.
The hearing officer accepted Thomas’ testimony and rejected the conflicting testimony of Ramsey’s officers and employees. The hearing officer believed that Thomas was following instructions when he attempted to assist with the bus repair. On this record, the hearing officer was not clearly wrong in finding that Thomas was injured in an accident arising out of and in the course of his employment. Given the weight which must be accorded to the credibility choices made by the fact-finder, this assignment is without merit.

CALCULATION OF BENEFITS

Ramsey’s second assignment of error is two-fold. The first contention is that the hearing officer erred in calculating the benefits due Thomas. We agree.
Thomas was paid $4.25 per hour. His gross salary was $170 per week, 66% percent of which is $113.33 per week. The trial court incorrectly calculated the benefits due to Thomas when it ordered Ramsey’s to pay worker’s compensation of $180 per week from the date of the accident until Thomas returned to work. Therefore, the trial court judgment is amended to reflect that weekly benefits in the amount of $113.33 should be paid Thomas. The record contains no indication that he worked less than 40 hours per week at his own discretion. LSA-R.S. 23:1021(10)(a).
The second contention is that Thomas has not shown that he was disabled from working more than seven days after the accident.
LSA-R.S. 23:1221 requires a claimant to prove his disability by clear and convincing evidence. Decisions of credibility and whether a claimant has sustained his burden of proof are factual determinations which are entitled to great weight. Absent error these conclusions should not be disturbed on appeal.
In the instant case, the only reference in the record to seven days is the almost indecipherable notation on the St. Francis Hospital chart that Thomas was to wear a knee brace seven (or nine) days. Thomas testified that he still has pain in his knee which prevents his return to work. Thomas saw Dr. Hand after seven days and arthroscopic surgery was recommended but was cancelled because of Ramsey’s refusal to pay for the surgery. The hearing officer believed Thomas’ testimony that he was still experiencing pain in his knee. After careful review, we are unable to say that the hearing officer’s factual determination was clearly wrong. This assignment is without merit.

ATTORNEY FEES AND PENALTIES

In its final assignment of error, Ramsey’s contends that the hearing officer erred in assessing penalties, attorney fees and costs against it. We disagree.
LSA-R.S. 23:1201 E provides that penalties are appropriate if the employer does not have a reasonable basis on which to controvert the worker’s claim to compensation.
*672 Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in refusing to pay. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991). In Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App.2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989), this court stated that a claim is reasonably controverted if the employer has sufficient factual and medical information to reasonably counter the information presented by the claimant. Attorney fees require a finding that the employer’s action was arbitrary and capricious or without probable cause under LSA-R.S. 23:1201.2. Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action. Lubom v. L.J. Earnest, Inc., supra.
In the instant case, Ramsey’s argument that it reasonably controverted the claim is not supported by the record, because Dr. Hand stated surgery was can-celled because Ramsey’s had no insurance and refused to pay for Thomas’ surgery. Also, the record is devoid of indication that Ramsey’s attempted to gather any information about Thomas’ condition or injury.
Further, Thomas’ claim for attorney fees and cost was properly granted because the refusal to pay benefits was arbitrary, capricious and without probable cause. LSA-R.S. 23:1201.2. In Woolsey, supra, the court noted that attorney fees are appropriately awarded when little or no attempt is made to investigate a claim and an attitude of indifference is exhibited toward the employee. Trial courts have great discretion in awarding attorney fees. Lubom, supra. The hearing officer was not clearly wrong in awarding statutory penalties, attorney fees and costs against Ramsey’s Trailways, Inc. This assignment is without merit.

CONCLUSION

For the reasons expressed, the judgment is amended to award benefits of $113.33 per week from the accident until Thomas is released to return to work.
It is ordered, adjudged and decreed that there be judgment in favor of claimant, Lawrence Thomas, Jr., and against Ramsey’s Trailways, Inc. awarding benefits in the amount of $113.33 per week from April 24, 1991, until Thomas is released to return to gainful employment, plus medical expenses, statutory penalties and attorney fees of $750. Ramsey’s Trailways, Inc. is cast for all costs of these proceedings.
AMENDED AND, AS AMENDED, AFFIRMED.