636 So.2d 914 (1994)
Melvin JOHNSON
v.
VINSON GUARD SERVICE, INC., et al.
No. CA 92 2187.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Dissenting Opinion April 12, 1994.
Rehearing Denied May 18, 1994.
*915 Charles A. Schutte, Jr., Matthews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for defendant-appellant Vinson Guard Service, Inc.
C.E. Bourg, II, Morgan City, for plaintiff-appellee Melvin Johnson.
Before CARTER, GONZALES and WHIPPLE, JJ.
Dissenting Opinion of Judge Gonzalez April 12, 1994.
WHIPPLE, Judge.
This worker's compensation case is again before us on appeal.[1] Following a third trial on the merits, held on December 3, 1991, judgment was rendered in favor of plaintiff, Melvin Johnson (Johnson), and against defendants, Vinson Guard Service, Inc. (Vinson), Johnson's employer, and the Louisiana Insurance Guaranty Association (LIGA), as statutory guarantor of Vinson's worker's compensation insurer, Western Preferred Casualty Company (Western), awarding plaintiff compensation benefits and unpaid medical expenses. The judgment also ordered Vinson to pay statutory penalties of 12% on the past due weekly compensation benefits and on the unpaid medical expenses awarded, and attorney's fees. From the portion of the judgment awarding penalties and attorney's fees, Vinson appeals.
The parties jointly stipulated, prior to trial, that the transcripts and certain exhibits from the two previous trials would be considered as evidence. The parties further stipulated that Johnson was employed by Vinson on the date of the accident and was acting within the course and scope of his employment when the accident occurred; that the total amount of medical expenses incurred was $38,905.84; and that the correct amount of Johnson's weekly benefits was $128.01.
The issues presented in this appeal concern the trial court's award of penalties and attorney's fees. On appeal, Vinson asserts the following as error by the trial court:
1. The court erred in finding Vinson liable for a penalty of 12% on the indemnity benefits awarded to Johnson.
2. The court erred in finding Vinson liable for a 12% penalty on the medical expenses awarded to Johnson.

*916 3. The trial court erred in making an award of attorney's fees.
4. R.S. 23:1201.2 is not applicable to Vinson because Vinson had worker's compensation insurance.
5. The award of $40,000.00 in attorney's fees is unreasonable.

STATUTORY PENALTIES

(Assignment of Error No. 1)
Appellant contends that the trial court erred in awarding Johnson penalties on the weekly indemnity benefits. Appellant argues that the trial court made the award because it applied an incorrect legal standard in determining whether to impose penalties. According to appellant, the trial court incorrectly applied the pre-1983 standard in determining whether to impose penalties, instead of the post-1983 standard, which appellant argues is a less burdensome standard for judging the employer's actions.
As appellant correctly notes, following the 1983 amendments to the Louisiana Worker's Compensation Law, "arbitrary and capricious" standard continues to apply to attorney's fee awards under LSA-R.S. 23:1201.2. However, the "arbitrary and capricious" standard no longer applies to an award of penalties which are now governed by LSA-R.S. 23:1201. The assessment of penalties after 1983 is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims. LSA-R.S. 23:1201(E); Winn v. Thompson-Hayward Chemical Company, 522 So.2d 137, 144 (La.App. 2nd Cir.1988).
The trial court, in its written reasons for judgment, stated that "[t]he action of Vinson has been arbitrary and subjects them to statutory penalty under [R.S.] 23:1201,2 [sic]...". Further, the judgment of the lower court also states that an award is made in favor of plaintiff for "the statutory twelve (12%) percent penalty allowed under R.S. 23:1201.2 together with attorney's fees...."
Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). However, where, as in the instant case, the trial court commits legal error by applying the incorrect legal standard or principle, this Court is required to determine the facts de novo from the entire record and render a decision on the merits. See Gonzales v. Xerox, 320 So.2d 163, 169 (La.1975).
The test to determine whether the employee's right to benefits was reasonably controverted by the employer is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
Watson, 560 So.2d at 906.
Vinson contends that penalties are inappropriate because Johnson's entitlement to benefits was reasonably controverted. In support of its contention that plaintiff's entitlement to benefits was reasonably controverted, Vinson notes that, following the judgment rendered on January 27, 1986, (after the first trial held on July 2, 1985), Vinson conducted an investigation of plaintiff's claim, which revealed that Johnson had been employed in 1985 and had earned wages. Vinson also relies on the evidence adduced at the second trial, held on December 11, 1987, and January 21, 1988, wherein Johnson did not deny that he had been employed for a period of time in 1985 (after the first trial) and had earned wages.
Vinson's reliance on these facts is misplaced. Johnson testified that the accident in question occurred on January 27, 1984. Johnson further testified that he received compensation benefits through September of 1984, when compensation and medical benefits *917 were stopped.[2] At this point in time, Johnson had attempted to return to work at Vinson, but was unable to do so because of his injuries. Moreover, Johnson testified that he attempted to work in January of 1985, but was again unable to do so. However, Vinson contended that as of January 3, 1985, Johnson was able to engage in gainful employment and, accordingly, was no longer entitled to benefits.
As the record clearly shows, at the time Vinson terminated payment of compensation benefits and refused to pay medical expenses, Vinson did not have knowledge that Johnson had allegedly become employed and was earning wages. Thus, Vinson cannot claim that its subsequently acquired knowledge of plaintiff's alleged employment justified termination or provided a sufficient basis for the employer to reasonably believe that medical expenses and compensation benefits were not due at the time benefits were terminated and medical expenses were denied.
The extensive medical evidence in the record establishes that in the latter part of 1984, Johnson was still under treatment for the injuries he had sustained. Johnson testified that he underwent back surgery on February 8, 1984, and continued under the care of Dr. Fitter, the original treating physician, until January of 1985.
The deposition of Dr. James N. Domingue, a neurologist, introduced into evidence at the second trial and admitted by stipulation in the third trial, shows that Dr. Domingue evaluated Johnson on October 30, 1984, and noted that Johnson was taking pain medication, namely Tylenol Number Four and Percodan. Johnson's complaints of pain prompted Dr. Domingue to prescribe a TENS unit and back brace. Dr. Domingue saw Johnson again on November 27, 1984, at which time he noted Johnson's complaints that the TENS unit and back brace were not relieving his pain.
The testimony of Dr. Christopher Cenac, an orthopedic surgeon, was similarly introduced. Dr. Cenac testified that he first saw Johnson on January 25, 1985, at which time he recommended further surgery, which was eventually performed on April 23, 1986. On January 12, 1987, Johnson again underwent back surgery. At the time of the second trial, Dr. Cenac noted plaintiff's need for a third surgical procedure.
After carefully considering the record herein, and the facts, medical and otherwise, known to the employer at the time benefits were discontinued, we are unable to conclude that at the time plaintiff's benefits were terminated, Vinson had sufficient information to reasonably controvert Johnson's claim of disability and entitlement to compensation and medical benefits. Thus, we conclude from our consideration of the record (as did the trial court) that an assessment of penalties pursuant to LSA-R.S. 23:1201 was warranted under these circumstances.

PENALTY AWARD ON UNPAID MEDICAL EXPENSES

(Assignment of Error No. 2)
Appellant contends that the trial court erred in awarding a 12% penalty calculated on $38,905.84, the amount of plaintiff's unpaid medical benefits. Appellant argues that LSA-R.S. 23:1201 specifically provides for the imposition of a 12% penalty on the installment of indemnity benefits which are not timely paid, and does not address or apply to the failure to timely pay medical expenses.
In Dubois v. Diamond M Company, 559 So.2d 777, 782 (La.App. 3rd Cir.), writ denied, 563 So.2d 866 (La.1990), the third circuit held that LSA-R.S. 23:1201, providing for penalties for the failure to pay compensation benefits, does not provide for penalties for failure to pay medical expenses. However, this court, in Hall v. McDonald Insulation, 537 So.2d 328, 333 (La.App. 1st Cir. 1988), found the worker's compensation claimant entitled to a 12% penalty on unpaid *918 medical expenses, pursuant to LSA-R.S. 23:1201. We decline to follow Dubois and in accordance with this court's decision in Hall, we find, as did the trial court, that appellant was entitled to an award of penalties on the unpaid medical expenses.[3]

ATTORNEY'S FEES

(Assignments of Error Nos. 3, 4, and 5)
In these related assignments of error, appellant challenges the awarding of (and the amount of) attorney's fees rendered in favor of Johnson and against Vinson. In assignment of error number three, Vinson contends that the trial court erred in concluding that an award of attorney's fees was warranted. In assignment of error number four, Vinson contends that under LSA-R.S. 23:1201.2, an award of attorney's fees cannot be made against Vinson, an insured employer.
The record reflects that after plaintiff filed his claim for compensation, Vinson's worker's compensation insurer, Western, became insolvent. Judgment was rendered against Vinson and LIGA, Western's statutory successor, for weekly compensation and medical benefits. The award of attorney's fees was made against Vinson alone.
LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:

Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.... (Emphasis added.)
Pursuant to LSA-R.S. 23:1201.2, attorney's fees may be assessed only against an insurer or against a self-insured employer. Winn, 522 So.2d at 145; see also, Holiday v. Borden Chemical, 524 So.2d 285, 288 (La. App. 1st Cir.), writ denied, 531 So.2d 283 (La.1988); Bankston v. Gregory & Cook, Inc., 506 So.2d 820, 822 (La.App. 1st Cir. 1987). Generally, an employer, insured by a worker's compensation insurer cannot be held liable for penalties and attorney's fees. However, an employer is liable for attorney's fees and penalties for arbitrary and capricious denial of compensation benefits when the employer is self-insured or self-insured to some extent. Sharbono v. H & S Construction Company, 478 So.2d 779, 787 (La.App. 3rd Cir.1985). Moreover, the employer relying on the existence of compensation insurance coverage to avoid liability for penalties and attorney's fees bears the burden of proving the nature and extent of coverage. Sharbono, 478 So.2d at 787.
In written reasons for judgment, the trial court stated:
The action of Vinson warrant[s] a finding that refusal to pay has been arbitrary....
The Court notes for the record ... that Vinson had expended only TWENTY-TWO THOUSAND TWO HUNDRED FORTY-SIX AND 65/100 ($22,246.65) DOLLARS of its THIRTY-FIVE THOUSAND AND NO/100 ($35,000.00) DOLLARS self[-]insured portion prior to stopping all compensation payments to Mr. Johnson and his health care providers; furthermore, that and [sic] it obtained a judgment for SIXTY-ONE THOUSAND SIX HUNDRED FORTY AND 14/100 ($61,640.14) DOLLARS in legal expenses and TWENTY-TWO THOUSAND TWO HUNDRED FORTY-SIX AND 65/100 ($22,246.65) DOLLARS compensation and medical expenses paid in this matter together with legal interest less their co-insured portion of THIRTY-FIVE THOUSAND *919 AND NO/100 ($35,000.00) DOLLARS on 22 August, 1991.
In its brief to this Court, Vinson does not dispute the trial court's factual finding that Vinson was self-insured to the extent of $35,000.00. Instead, Vinson contends that because it had worker's compensation insurance which provided coverage for Johnson's claim, there was no basis for an award of attorney's fees against Vinson in this case.
We find no merit in this claim. In support of its argument, Vinson cites Bankston v. Gregory & Cook, Inc., 506 So.2d at 820. However, the facts in Bankston are distinguishable, as that case did not involve a self-insured employer. In Bankston, the record contained uncontradicted testimony which indicated that the employer carried worker's compensation insurance coverage and did not involve a self-insured or partially self-insured employer. Bankston, 506 So.2d at 822.
As the trial court properly concluded herein, an employer which is self-insured or self-insured to some extent is subject to the statutory penalty and assessment of attorney's fees where the employee is not paid compensation under circumstances deemed to be arbitrary and capricious. Holiday, 524 So.2d at 288; Sharbono, 478 So.2d at 787.
In its final assignment of error, Vinson contends that the $40,000.00 awarded as attorney's fees was unreasonable and excessive. We disagree.
The amount of attorney's fees is based upon the attorney's skill and the amount of work required of him. The trial court has much discretion in determining the reasonableness of attorney's fees. Sharbono, 478 So.2d at 788. In considering the amount awarded by the trial court, we note (as did appellant in its brief) that appellee's counsel has represented Johnson since 1984 in three trials, three appeals, a request for rehearing, and a writ application to the Louisiana Supreme Court. The multiple volumes and exhibits which comprise the record in this case attest to the time and effort expended by appellee's counsel in prosecuting Johnson's claim. Considering the record in its entirety, and the protracted nature of this litigation, we find no abuse of discretion by the trial court.
After carefully considering the record herein, we find no error in the trial court's decision to award attorney's fees against Vinson for its arbitrary denial of benefits lawfully due Johnson. We also find no error or abuse of discretion by the trial court in the amount of attorney's fees awarded.
Accordingly, these assignments of error are without merit.

CONCLUSION
For the above and foregoing reasons, the June 1, 1992, judgment of the trial court in favor of Melvin Johnson and against Vinson Guard Service, Inc. is affirmed. Costs of this appeal are assessed against appellant, Vinson Guard Service, Inc.
AFFIRMED.
GONZALES, Judge, dissenting.
I respectfully dissent from the majority's affirmance of penalties and attorney fees. The majority correctly points out that the assessment of penalties against Vinson is determined by inquiring whether Vinson "reasonably controverted" Johnson's compensation claim. La.R.S. 23:1201(E). However, penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in refusing to pay. Thomas v. Ramsey's Trailways, Inc., 618 So.2d 667, 671-672 (La.App.2d Cir.), writ denied, 626 So.2d 1174 (La.1993). The record does not support a finding that Vinson's good faith and just cause in discontinuing Johnson's benefits were "clearly negated" in light of the facts known to it at the time.
Even if an award of attorney fees was warranted in this case, the $40,000.00 awarded to Johnson by the trial court is excessive. The factors usually taken into account in determining attorney fees in a worker's compensation case are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525, 528 (La.1981). Although Johnson's counsel has represented him in three trials, three appeals, a request for rehearing, *920 and a writ application to the Louisiana Supreme Court, it should be noted that the three trials consumed a total of only four days; and despite the extended nature of this litigation, much of the delay was due to the judicial process rather than any effort expended by counsel for the parties. There is inadequate evidence in the record to support an award of $40,000.00 in attorney fees.
NOTES
[1] The basic facts and procedural history of this case are set forth at length in this Court's prior opinion, Johnson v. Vinson Guard Service, Inc., 577 So.2d 56 (La.App. 1st Cir.1990), writ denied, 578 So.2d 915 (La.1991), and will not be repeated herein.
[2] In its brief to this court, Vinson states that compensation benefits and medical expenses were paid through January 3, 1985. However, according to Vinson's answer and supplemental petition, plaintiff was paid compensation until August of 1984. Vinson also admitted in its answer filed June 25, 1985, that it refused to pay for additional treatment and surgery recommended by Dr. Christopher Cenac.
[3] LSA-R.S. 23:1201 E. was amended by Acts 1992, No. 1003, effective January 1, 1993. The amendment made the penalty provisions contained therein applicable to unpaid weekly compensation benefits and/or unpaid medical benefits.