667 So.2d 1094 (1995)
Marsha Lorraine HENDERSON
v.
NEW MEDICO ASSOCIATES, INC. and American International Adjustment Company, Inc.
No. 95 CA 0488.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
Rehearing Denied February 9, 1996.
Writ Denied April 8, 1996.
*1095 J. Paul Demarest, New Orleans, for Marsha Lorraine Henderson.
Raymond S. Maher, Jr., New Orleans, for New Medico Associates, Inc.
Before LeBLANC, WHIPPLE, and FOGG, JJ.
FOGG, Judge.
In this workers' compensation appeal, the issues concern the proper rate of compensation and the entitlement to certain medical expenses, penalties and attorney's fees.
Marsha L. Henderson filed a claim against her employer, New Medico Associates, Inc. ("New Medico"), arising out of a work-related accident which occurred on December 2, 1991. Henderson sought to recover unpaid medical expenses and additional compensation, claiming that New Medico improperly reduced her benefits based on an erroneous hourly wage. The hearing officer rendered judgment against New Medico, awarding Henderson $2,200.29 (representing the difference between the amount of compensation paid ($264.01 weekly) and the proper amount of compensation ($295.00 weekly) for the period from January 7, 1993 through May 26, 1994, the date of trial) and ordering New Medico to continue paying weekly compensation benefits in the amount of $295 weekly until Henderson is no longer temporarily totally disabled. The judgment also ordered New Medico to pay the balance due Slidell Memorial Hospital in the amount of $11,397.06. Finally, the hearing officer determined that New Medico was arbitrary and capricious in its handling of the case and awarded "penalties, interest and attorney's fees in the amount of $5,000.00 as set forth in the statutes" together with costs.[1] From this judgment, New Medico appeals.
*1096 New Medico contends that the hearing officer erred in determining that $295 was the proper compensation rate and basing Henderson's entitlement to compensation on this amount; in ordering it to pay Slidell Memorial Hospital $11,397.06; in determining that it was arbitrary and capricious such that it owed penalties and attorney's fees; and in awarding an excessive amount as attorney's fees.
The testimony concerning Henderson's wages was as follows. Henderson, a nurse, testified that she was hired as a full-time employee to work forty hours per week. She explained that she was a per diem employee, which meant she was not entitled to benefits and consequently received higher pay. She testified that when she was hired, the base pay was $11.83 per hour, but that after 3:00 p.m., she received a shift differential and her pay exceeded $12.00 per hour. At some point, Henderson requested that she be taken off per diem so she could receive health insurance benefits. Henderson testified that she was told that after she was no longer a "per diem" employee her base pay would be $9.90 per hour, but that she would still receive a shift differential for evening work. In the four weeks before the accident, she generally worked a forty hour week consisting of sixteen hour shifts from 6:30 or 7:00 a.m. until 11:00 p.m.
Carolyn Calvin, the adjuster on the case, testified that compensation benefits of $295 weekly were paid to Henderson from December 10, 1991 through December, 1992. The rate of compensation paid was based on information Henderson gave Calvin regarding her wages; Calvin testified she was unable to verify the information given her until January, 1993. On January 5, 1993, Virginia Addington, New Medico Associates' personnel coordinator, verbally informed Calvin that Henderson's hourly wage rate was $9.90 at the time of the accident. Calvin then began paying weekly compensation of $264.01.[2] On January 25, 1993, Calvin received a faxed document from Addington listing Henderson's wages for the weeks from November 9, 1991 through November 30, 1991 as well as the hours she worked. The faxed document did not indicate that Henderson's hourly wage was $9.90, and, furthermore, Calvin testified that when she divided Henderson's gross pay as shown in the document by the number of hours worked, as shown, she determined that Henderson's pay ranged from $10.71 to $12.30 per hour.[3] Calvin testified that she could not understand the difference from $9.90 per hour and she phoned Addington. According to Calvin, "I just couldn't get anybody to really give me an answer that could go along with what I had and what they were telling." She explained that she had gotten "very little cooperation from the insured."
Calvin later received another document from Addington dated September 21, 1993 and listing Henderson's wages from October 5, 1991 through December 7, 1991. The document was introduced into evidence as Exhibit 15. This document did state that Henderson's base pay as of November 2, 1991 was $9.90 per hour, but the figures in the document for wages and hours worked were the same as those in the previously faxed document, again indicating an hourly wage ranging from $10.71 to $12.30 per hour.
Addington testified that in September, 1991, Henderson was hired at the rate of $11.15 an hour, based on a base pay of $9.90 per hour with a $1.25 per diem. If she worked a weekend she would receive an extra $1.00 an hour and if she worked in the evenings, she would receive an extra $1.25 an hour. On November 2, 1991, according to Addington, Henderson became a full time employee and she lost the per diem pay. Addington testified that Henderson would have been given notice that her pay was decreasing to $9.90 per hour; however, *1097 Henderson's payroll records contained no such notice. Addington admitted that based on the payroll records, Henderson earned over her base pay of $9.90 per hour due to the inclusion of the shift differential, the additional pay for weekend or evening work. Addington could not recall receiving phone calls from Calvin regarding Henderson's wage rate.
In reviewing the determination in a workers' compensation case, the hearing officer's factual findings will not be disturbed unless they are clearly wrong or manifestly erroneous. Farrill v. Hammond State School, 93-1735 (La.App. 1st Cir. 6/24/94); 639 So.2d 449. An employee's average weekly wage is determined as follows: "If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; ..." LSA-R.S. 23:1021(10)(a)(i). Overtime wages are included in the calculation of the average weekly wage. Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir. 9/23/94); 643 So.2d 352.
We cannot say that the hearing officer was manifestly wrong in determining that Henderson was due $295 weekly in workers' compensation. The hearing officer stated, in his reasons for judgment, that he based his determination of the correct rate of pay on Exhibit 15. Based on Exhibit 15, Henderson's hourly wage for each of the four weeks was $12.30, $11.10, $10.99, and $10.71, respectively; based on these figures, Henderson's weekly workers' compensation benefits should be $295.[4] While New Medico contends that Henderson failed to support her testimony as to her wages with a W-2 statement or any other evidence, Henderson's testimony regarding her wages is supported by the figures supplied by New Medico. The hearing officer did not err in relying on these figures and in including Henderson's shift differential in the calculation of her hourly wage because Henderson regularly received the shift differential. Therefore, New Medico's contention has no merit.
Regarding the medical expenses, New Medico refused to pay certain expenses, contending they were allegedly unapproved, non-emergency charges and were for treatment unrelated to Henderson's claim. The following are the medical expenses at issue: a balance due of $4,894.55 for Henderson's hospitalization from September 1, 1992 until September 12, 1992; a bill of $5,402.91 for a hospitalization from July 31, 1992 to August 7, 1992; a bill of $884.26 for an admission to the emergency room on October 5, 1992; and the balance of $215.28 on a bill for an MRI on November 23, 1992.
On appeal, New Medico contends that the unauthorized, non-emergency treatment would be subject to a $750.00 cap under LSA-R.S. 23:1142. Although LSA-R.S. 23:1203(A) provides that the employer shall furnish all necessary drugs, supplies, hospital care and services, and medical and surgical treatment, LSA-R.S. 23:1142 places some limits on the reimbursement due for certain medical procedures. LSA-R.S. 23:1142(B) addresses nonemergency care and provides as follows:
Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
*1098 The payor is the entity responsible for the payment of medical expenses incurred by a claimant due to a work-related injury. LSA-R.S. 23:1142(A)(1). Emergency care is covered by LSA-R.S. 23:1142(C), which states,
(1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.
(2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider.[5]
Therefore, if the health care provider's treatment was of a nonemergency nature and was not approved by the insurer, the provider cannot be reimbursed more than $750.00 of its total charges. The burden of proof is on the claimant or health care provider to show by a preponderance of the evidence that the medical services were necessary and to show the value of those services. Stewart v. Self-Insurer's Bureau, 626 So.2d 34 (La.App. 1st Cir.1993).
In his reasons for judgment, the hearing officer stated that New Medico should have paid the balance due of $4,894.55 for Henderson's eleven day hospitalization from September 1, 1992 until September 12, 1992 for a lumbar laminectomy with a fusion. While Dr. Butler testified that the surgery had been approved by New Medico's adjuster, Calvin testified that Slidell Memorial Hospital and Henderson had the approval of New Medico's insurer or adjuster for only five days and did not have approval for the remaining six days of hospitalization. Dr. James Butler, Henderson's orthopedic surgeon, explained that Henderson needed to remain hospitalized over the five days originally approved due to pain management problems. We find the authorization for the surgery included the additional time in the hospital necessary for Henderson to recover from the surgery, such that the hearing officer did not err in awarding Henderson the balance owed of $4,894.55 for this hospitalization.
The hearing officer determined that Henderson's hospitalization from July 31, 1992 to August 7, 1992, for which the bill was $5,402.91, should have been paid because Dr. Butler testified that Henderson entered the hospital due to pain connected with her accident. New Medico's insurer and the adjuster did not consent to and were not notified of Henderson's treatment on this occasion. The hearing officer found that the treatment was in the nature of emergency care. While Dr. Butler's discharge summary states that Henderson was electively admitted to the hospital for control of back pain, Dr. Butler wrote the adjuster a letter dated August 11, 1992, wherein he discussed Henderson's hospitalization on August 1, 1992, and stated "Since [the admission] was on a weekend, she had to be admitted ... on an emergency basis." Dr. Butler testified that the admission was for severely increasing back and leg pain directly related to her back and leg symptoms which began after her work accident. Henderson was treated with bedrest and traction. Because the medical treatment was necessary and related to Henderson's work injury, and because we cannot say that the hearing officer's determination that the treatment constituted emergency care was manifestly wrong, the hearing officer did not err in awarding Henderson the balance owed of $5,402.91 for this hospitalization.
*1099 The hearing officer determined that Henderson's admission to the emergency room on October 5, 1992, was an emergency and the bill of $884.26 should have been paid. We agree with the hearing officer's determination that the treatment of October 5, 1992 was emergency treatment. The hospital records show that Henderson was brought by ambulance to the emergency room for treatment to her back due to a fall she had when her legs gave way. Dr. Butler indicated that it is common for patients who have had back surgery to have a tendency to fall once they start moving around. The evidence in the record establishes the necessity of the treatment and that the medical expenses incurred by Henderson were related to the surgery, which was related to her accident.
Finally, as to the balance due on the MRI, Dr. Butler testified that it was authorized. The MRI was performed to determine what was responsible for Henderson's falls following the surgery and it showed post-operative changes at L5-S1 with scar tissue present. Such post-operative changes could contribute to Henderson's complaints of pain. Additionally, Dr. Butler testified that the complaints of pain Henderson had and the surgery were related to the work accident. Therefore, the MRI was necessary and related to the injuries Henderson sustained in her work-related accident and the hearing officer did not err in awarding $215.28, based on the uncontroverted testimony of Dr. Butler that the MRI was authorized.
In awarding penalties and attorney's fees, the hearing officer stated that New Medico "was less than thorough and did not give attention to detail in handling this case," referring to Barton v. Wausau Insurance Co., 545 So.2d 1248 (La.App. 2d Cir.1989). He then stated that nothing indicated that nonpayment resulted from conditions beyond the insurance adjuster's control. Finally, he found that New Medico acted in an arbitrary and capricious manner in handling the case, in reducing Henderson's weekly compensation and in not paying the medical expenses due.
Whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Johnson v. Vinson Guard Service, Inc., 92-2187 (La.App. 1st Cir. 3/11/94); 636 So.2d 914. Following the 1983 amendments to the Louisiana Workers' Compensation Law, the "arbitrary and capricious" standard continues to apply to attorney's fee awards under LSA-R.S. 23:1201.2; however, the "arbitrary and capricious" standard no longer applies to an award of penalties, which is now governed by LSA-R.S. 23:1201.[6] The assessment of penalties is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims. LSA-R.S. 23:1201(E); Johnson, 92-2187 at p. 3; 636 So.2d at 916.
In this case, we find that the hearing officer did not err in assessing New Medico with penalties. Nonpayment of the correct amount of benefits did not result from conditions beyond New Medico's control, nor did anyone "reasonably controvert" the correct wage. The adjuster for New Medico was aware that Henderson regularly earned over $9.90 per hour, yet she simply continued to pay Henderson compensation based upon $9.90 hourly. As the hearing officer stated in his reasons for judgment, the adjuster "admitted that she knew something was wrong about the hourly wages, but she merely took what the defendant gave her as the hourly wage." Henderson's attorney in several letters pointed out the discrepancy between the wage derived from the figures New Medico provided showing what Henderson had actually earned and the $9.90 figure and asked for an explanation, yet the adjuster did not investigate any further. When the adjuster began paying Henderson based on the $9.90 figure, the only basis for her reliance was the verbal information given by Addington, the personnel coordinator. Neither New Medico's own documentation *1100 regarding what Henderson actually had earned nor the information Henderson gave the adjuster corroborated the $9.90 figure. Furthermore, New Medico's personnel coordinator testified that she could not recall receiving any phone calls from the adjuster regarding the wage rate. The personnel coordinator also testified that the wages in Exhibit 15 included a shift differential, a matter which could have easily been explained to an adjuster. The adjuster's failure to include the shift differential in Henderson's hourly wage is similar to a failure to include overtime wages in the calculation of benefits, in which case LSA-R.S. 23:1201(E) has been applied to award penalties for that unpaid portion of the benefits attributable to overtime. Barton, 545 So.2d at 1253. Therefore, we cannot say the hearing officer erred in awarding penalties on the unpaid compensation.
As to the unpaid medical expenses, we find that the hearing officer did not err in awarding penalties on the unpaid medical expenses totalling $11,397.00. We have thoroughly reviewed the record and cannot say that the hearing officer was manifestly wrong in finding that the nonpayment did not result from conditions beyond New Medico's control or in concluding that the right to these medical benefits was not reasonably controverted, thus warranting the imposition of penalties.
The amount of penalties is governed by LSA-R.S. 23:1201(E), which stated, prior to its amendment, in pertinent part,
If any installment of compensation payable without an order is not paid within the time period provided ... there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, ... The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
Interest on penalties is allowed from the date of judicial demand. Thibodeaux v. Aetna Casualty & Surety Co., 454 So.2d 1141 (La. App. 1st Cir.1984); Barton, 545 So.2d at 1255. Therefore, the appropriate penalty award in this case is $1,631.67, with interest from date of judicial demand.[7]
As to attorney's fees, LSA-R.S. 23:1201.2 states,
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.
(Emphasis added)
Pursuant to LSA-R.S. 23:1201.2, attorney's fees may be assessed only against an insurer or against a self-insured employer. Johnson, 92-2187 at p. 7; 636 So.2d at 918. In this case, New Medico was not a self-insured employer, as it was stipulated at trial that its insurer was Landmark Insurance Company. Therefore, the hearing officer erred in assessing attorney's fees against New Medico. Based on this determination, we pretermit the issue of whether the attorney's fees were excessive.
For the foregoing reasons, the judgment of the hearing officer is affirmed in part and reversed insofar as it awards attorney's fees to Henderson. The judgment is amended to award Henderson penalties in the amount of $1,631.67 together with interest from date of judicial demand on the penalty award. Costs of this appeal are to be paid equally by New *1101 Medico Associates, Inc. and Lorraine Henderson.
AFFIRMED IN PART, AMENDED IN PART, AND REVERSED IN PART.
NOTES
[1] Although New Medico's adjuster, American International Adjustment Company, was named as a defendant by Henderson and answered the petition, judgment was only rendered against New Medico.
[2] Calvin calculated the benefits as follows:

$9.90 per hour × 40 hours per week = $396.00.
$396.00 × 66 2/3% = $264.01.
[3] According to the faxed document, Henderson's hours worked and wages earned were as follows: 39.5 hours the week of November 9, 1991 earning $485.93; 40 regular hours and 7.5 overtime hours the week of November 16, 1991 earning $527.38; 23.75 hours the week of November 23, 1991 earning $261.13; and 32 hours the week of November 30, 1991 earning $342.80.
[4] When calculated based on the figures supplied by New Medico, Henderson's average weekly wage exceeds the maximum weekly wage. The maximum weekly wage was $295 at the time of Henderson's accident. LSA-R.S. 23:1202(A); Louisiana Register (Vol. 17, No. 8, August 20, 1991).
[5] The provisions of LSA-R.S. 23:1142 requiring approval from the compensation insurer or employer before health care fees will be paid are inapplicable where the employer and its insurer deny that the claimant's problems are compensable under the worker's compensation provisions. LSA-R.A. 23:1142(E); see also LeBlanc v. Cajun Painting Inc., 94-1609 (La.App. 1st Cir. 4/7/95); 654 So.2d 800.
[6] Our reference to LSA-R.S. 23:1201 is as it read at the time of Henderson's accident and prior to its amendment by Acts 1995, No. 1137 and Acts 1992, No. 1003, § 1. Our reference to LSA-R.S. 23:1201.2 is as it read at the time of Henderson's accident and prior to its amendment by Acts 1995, No. 1137.
[7] The amount of unpaid compensation was $2,200.29, which multiplied by twelve percent yields a result of $264.03. The total amount of unpaid medical expenses to which Henderson was entitled was $11,397.00, which multiplied by twelve percent yields $1,367.64. Therefore, the total penalty is $1,631.67.