688 So.2d 1048 (1996)
Darrell L. HENDERSON, M.D. and Surgery Center, Inc., Plaintiff-Appellants,
v.
Alfred Octave PAVY, Defendant-Appellee.
No. 96-90.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1996.
*1049 Lawrence N. Curtis, Lafayette, for Darrell L. Henderson, M.D., et al.
H. Douglas Hunter, Opelousas, for Alfred Octave Pavy.
Alfred Octave Pavy, pro se.
Before SAUNDERS, AMY and GREMILLION, JJ.
GREMILLION, Judge.
Plaintiffs, Dr. Darrell L. Henderson and the Surgery Center, Inc., appeal the ruling of the workers' compensation hearing officer finding that the defendant, Alfred Octave Pavy, did not consent to the surgical procedure performed on Laura Fitzgerald. Finding that the hearing officer committed *1050 manifest error in reaching this decision, we reverse.

FACTS
Fitzgerald developed bilateral carpal tunnel syndrome while working as a legal secretary in Pavy's law office. Surgery was performed on both of Fitzgerald's wrists in May of 1992 by Dr. Lionel Mayer, a doctor chosen by the defendant. However, this surgery did not relieve the symptoms experienced by Fitzgerald and she subsequently consulted a hand specialist, Dr. Henderson, in early 1993.
Fitzgerald saw Dr. Henderson for the first time on February 15, 1993. This examination revealed that additional surgery was required and that her complaints focused on her right wrist. He determined that the grip strength of the right hand was 35 pounds compared to a grip strength of 70 pounds for the left hand. Dr. Henderson did not see Fitzgerald again until October 25, 1993, eight months after the initial visit. He determined from this second examination that there was significant deterioration in the condition of Fitzgerald's wrists, particularly the left wrist. Dr. Henderson forwarded to Pavy a bill for this visit and an examination report in which he stated that he would be happy to perform the procedure once Pavy granted his consent. Although Dr. Mayer operated on both of Fitzgerald's wrists at the same time, Dr. Henderson felt it best to do one at a time to prevent Fitzgerald from being totally incapacitated. At this time he planned to do the right wrist first.
On November 1, 1993, Fitzgerald contacted Dr. Henderson's office and requested that surgery be done to her left wrist first, instead of the right, because it was causing her more trouble. The tenor of this conversation was noted in Fitzgerald's medical records. A couple of days later, Dr. Henderson received a letter dated November 2, 1993, from Pavy's attorney, W. Douglas Hunter, granting authorization to perform the surgery.
The carpal tunnel release was performed on Fitzgerald's left wrist on November 9, 1993. The bill for this surgical procedure, totaling $1,528.00, was forwarded to Pavy on November 12, 1993. Attached to this bill was the operative report detailing the procedure performed by Dr. Henderson. Two additional statements were sent to Hunter, dated December 2, 1993 and January 17, 1994, for postoperative services performed at Dr. Henderson's office.
Dr. Henderson received payments of $1,350.00, along with a payment of $1,754.40 for the Surgery Center, on February 7, 1994. A balance is owed on these two accounts: $400.00 for Dr. Henderson's services and $519.25 for the Surgery Center. These amounts were not paid because Pavy disputed whether the bill was in line with the workers' compensation schedule. On August 8, 1994, Dr. Henderson and the Surgery Center filed a Disputed Claim for Workers' Compensation. In defense of this action, Pavy contended that he only authorized surgery on the right wrist, not the left, and therefore was obligated to pay only $750.00 as mandated by La.R.S. 23:1142.
A hearing on this matter was held on July 11, 1995. In her written reasons of November 21, 1995, the hearing officer ruled in favor of Pavy and against Dr. Henderson and the Surgery Center. Dr. Henderson and the Surgery Center appeal that ruling asserting that the hearing officer was clearly wrong in determining that consent was given only for surgery on the right wrist, and that the hearing officer erred in not awarding fees for the services rendered, and penalties and attorney's fees under La.R.S. 23:1201.

LAW
The standard for fact review in workers' compensation cases is provided in Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La. 1/14/94), 630 So.2d 733, 737:
In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992). A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La. 1993). The appellate court must determine *1051 not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987); Rosell, supra; Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.
La.R.S. 23:1203(A) requires the employer to provide "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal" to an injured employee. However, limitations are placed on this requirement by La.R.S. 23:1142, which provides in part:
* * * * * *
D. Fees and expenses. If the payor has not consented to the employee's request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
"This state has long recognized the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee." Maxie v. Brown Industries, Inc., 95-19, p. 4 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, 446, writ denied, 95-1630 (La. 10/6/95), 661 So.2d 469. "La.R.S. 23:1142 does not give a specific formula by which the payor is to signify his consent; that process is to be decided by the payor and clearly communicated to the health care provider." Blanda v. Piggly Wiggly, 94-1614, p. 4 (La.App. 3 Cir. 5/3/95), 657 So.2d 106, 107.

ANALYSIS
In her written reasons, the hearing officer made factual findings that are not supported by the record. She first holds that "Dr. Henderson testified that in November, 1993, after surgery to the right wrist was authorized and scheduled, Fitzgerald called his office and asked that he repeat the carpal tunnel release on her left wrist first." The testimony of Dr. Henderson and the evidence presented during the hearing shows otherwise. Dr. Henderson testified that he spoke to Fitzgerald on November 1, 1993, concerning surgery to her left wrist. This testimony is supported by the notes made by Dr. Henderson's office relative to their conversations with Fitzgerald on that day. The letter authorizing the surgery was dated November 2, 1993, one day after the conversation and the related notations.
The hearing officer also determined that the testimony of Pavy was more credible than the testimony of Dr. Henderson, finding that Dr. Henderson deliberately failed to advise Pavy or his attorney that surgery was to be performed on the left wrist and that he deliberately failed to get authorization for the surgery. Once again, the testimony and the evidence presented strongly suggests the converse, thus we find that the hearing officer was manifestly erroneous in so finding.
We find that the evidence supports Dr. Henderson's assertion that he intended to operate on both wrists and that the only question was which one to do first. His report from the initial visit with Fitzgerald listed both wrists as problematic even though she did indicate that she was having more *1052 problems with the right. The second examination revealed that there was a significant deterioration in the condition of Fitzgerald's wrists. The grip strength of the left hand decreased from 75 pounds to 25 pounds and that of the right hand was 20 pounds down from 35 pounds. This indicated a rapid deterioration of the left hand. In his progress note of October 25, 1993, Dr. Henderson noted:
She is having more and more problems with her wrists and hands. She has more weaknesses of both hands and pinch than she did last time. She would like to go ahead with the carpal tunnel decompression and synovectomies we discussed last time. She is having problems getting her worker's compensation verified, since apparently her previous employer was not covered by worker's compensation insurance. It is my understanding now that he agreed to be responsible for her medical needs personally in compliance with Louisiana law. When things work out, we will be happy to do this surgery for her.
It is clear that Dr. Henderson was acting in the best interest of his patient. There is no evidence in the record that points to a deliberate attempt by Dr. Henderson to mislead Pavy. Additionally, the letter of consent relied on by Dr. Henderson reads as follows:
Please accept this correspondence as authority to proceed with the carpal tunnel outpatient procedure on the above patient. Octave Pavy, the employer, will be responsible for any reasonable and necessary charges incurred as a result of this surgery pursuant to the Office of Worker's Compensation's fee schedule. I am sure that you are familiar with the schedule and its application to workman's compensation cases. If you have any additional questions or comments regarding this limited authorization, do not hesitate to contact the undersigned attorney.
This authorization does not limit the procedure to either wrist. Indeed, it was reasonable for Dr. Henderson to believe that he was authorized to operate on either the left or the right wrist. If Pavy wanted to restrict his consent to the right wrist alone, he could have easily done so.
Finally, if the record supported a finding that the consent given restricted the surgery to the right wrist, Pavy would still be obligated to pay for these medical bills. We adopt the findings in Henderson v. New Medico Associates, Inc., 95-0488 (La.App. 1 Cir. 11/9/95), 667 So.2d 1094, where our brethren in the First Circuit held that when the care administered to the claimant was not authorized by the payor nor did it qualify as emergency care, the burden is on the claimant or the health care provider to prove by a preponderance of the evidence that the care was medically necessary and to show the value of those services. We find that the record shows that Dr. Henderson and the Surgery Center successfully discharged this burden. It is clear that it was medically necessary for Fitzgerald to have the surgery to her left wrist; therefore, plaintiffs are entitled to recover those amounts due.

PENALTIES AND ATTORNEY'S FEES
Dr. Henderson and the Surgery Center request that penalties and attorney's fees be assessed against Pavy for his arbitrary and capricious failure to pay the medical fees associated with the care of Fitzgerald. La. R.S. 23:1201(E) provides for the award of penalties and attorney's fees to the health care provider when the employer, or his insurer, fails to pay the medical fees within sixty days of receiving written notice. Failure to pay these fees in a timely fashion can result in the assessment of penalties equal to the greater of twelve percent of any unpaid fee or fifty dollars for each calendar day the bill remains unpaid. La.R.S. 23:1201(F). However, penalties and attorney's fees cannot be assessed when the claim is reasonably controverted. La.R.S. 23:1201(F)(2). Furthermore, statutes that provide for the assessment of penalties and attorney's fees are penal in nature and should be construed strictly. Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71 (La.App. 3 Cir.1993).
Pavy initially refused to pay the amount remaining on the medical bill because it was more than the estimate he was given by Dr. Henderson. There was a dispute as to whether this estimate provided for the payment of an anesthesiologist. Despite *1053 the fact that the difference in the bill and the services provided, especially the services of the anesthesiologist, were medically necessary, Pavy's refusal to pay the remainder of the bill does not warrant the assessment of penalties and attorney's fees.

CONCLUSION
For the foregoing reasons, the decision of the Office of Workers' Compensation in favor of the employer, Alfred Octave Pavy, is reversed and set side. Judgment is rendered in favor of plaintiffs, Dr. Darrell Henderson, in the amount of $400.00, and the Surgery Center, in the amount of $519.25, with legal interest from the date of judicial demand until paid. Plaintiffs request for penalties and attorney's fees is denied. All costs are assessed to the employer, Alfred Octave Pavy.
REVERSED AND RENDERED.